THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLINTON EARL JOHNSON, Defendant-Appellant.

Fifth District No. 75-9

Opinion filed February 27, 1976.

Stephen P. Hurley and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, and Leslie Miller, Law Student, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Rolf F. Ehrmann, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was charged by indictment with the offense of armed robbery. In a jury trial he was found guilty and sentenced to 6-18 years in the penitentiary, from which judgment he appeals.

The armed robbery for which defendant was sentenced occurred in

The Place, a bar in East St. Louis. There were two eyewitnesses, Irene Merritts, barmaid, and Clara Lewis, a customer.

Irene Merritts stated in substance that a man displaying a small, black automatic weapon forced her to lie on the floor while he took all the money from the cash register. There was ample light over the cash register, but the general lighting was dim—though in her words, "not real dark." She was certain that the defendant was the one who committed the robbery since, in her words, she had "a good look" at him and he had been in the bar between 30 and 45 minutes prior to the incident. She stated that she had been attracted to him because he looked like her ex-husband. Thus, she had watched him for over the course of about one-half hour. During most of this time he was 25 to 30 feet from her, but when the robbery was committed he was standing next to her. She testified that the gun which was exhibited by the People looked like the one used against her during the robbery. The witness also made a positive identification of the defendant in the lineup and identified him in the courtroom.

Clara Lewis, a customer in the tavern, testified that she had seen the defendant pacing the floor for approximately one-half hour. When defendant told everyone to drop to the floor she was about ten feet from him. Prior to the robbery the witness had a further occasion to look at the defendant when defendant told a drunken customer to stop swearing and to show some respect for the witness. The witness had a clear view of the defendant's face at this time. She testified that the gun exhibited by the People looked like the one used in the robbery. This witness also identified the defendant in the lineup and in the courtroom.

The weapon exhibited by the People was found by a police officer under a mattress in the bedroom of the defendant's father in the defendant's residence—though defendant's father testified that it was found on top of the clothes in a drawer. It was established that the defendant did not actually own the weapon, but it was owned by Ricky Witherspoon, a man who had been sitting at the bar at the time the robbery occurred. Three days after the robbery, defendant and Witherspoon were apprehended by the police running from a home on Lynch Avenue. Defendant and Witherspoon were arrested at this time.

Defendant raises several issues on appeal. He claims that he was twice placed in jeopardy; that he was denied his constitutional right to a speedy trial; that the State failed to prove him guilty beyond a reasonable doubt; that the court committed prejudicial error in permitting the gun to be introduced into evidence; and that closing arguments of the State's Attorney contained improper remarks which prejudiced his right to a fair trial.

Defendant claimed that double jeopardy resulted from the fact that a mistrial was declared and he was again placed on trial. The record shows that two days after the first trial commenced the defendant's attorney moved the court to grant a mistrial because prior to reconvening a juror sitting in the jury room had listened to a conference between the defendant and the defendant's attorney. The motion was granted and defendant now claims that the trial judge should not have granted the motion because he had other alternatives.

■■ We do not agree that these proceedings in the trial court placed defendant in double jeopardy. On this point our recent decision in *People v. Hill*, 34 Ill. App. 3d 193, is dispositive. Equally applicable here is the following from *Hill:*

> "In the instant case there is no evidence or suggestion of judicial or prosecutorial overreaching as that phrase is described above. There was, therefore, no double jeopardy violation when defendant was retried following the granting of his motion for a mistrial." 34 Ill. App. 3d 193, 197.

Defendant maintains that since he was not retried until 82 days after his mistrial and 164 days after his arrest, his constitutional right to a speedy trial was violated and that therefore his conviction should be reversed.

Defendant was arrested on November 23, 1973. On February 11, 1974, he was brought to trial. On February 13, the motion for a mistrial was granted. He was retried on May 6—164 days after his arrest and 82 days after the declaration of a mistrial. On April 4, 152 days after his arrest, a motion for discharge was filed but was denied.

The question we must determine is whether or not a new trial occurring 82 days after the declaration of a mistrial is an "unreasonable" length of time and violative of his constitutional right to a speedy trial.

Section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, §103—5(a)) states that:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

In the instant case there is no question but that delay was occasioned by the defendant since he moved for a mistrial and the motion was

granted. The question before us is whether or not the time which elapsed before he was retried was a reasonable time. In *People v. Ellis,* 132 Ill. App. 2d 920, 924, 271 N.E.2d 47, 50, the court stated:

> "Under prior Illinois law there was a so-called four-month rule. The Supreme Court had held that a mistrial started the four-month rule running again (*People v. Jonas,* 234 Ill. 56, 60). Under the 120-day rule now in force it has been stated that affording a speedy trial meant commencing a new trial, following a mistrial, within a reasonable time [citations]. As indicated in *People v. Hudson,* 46 Ill. 2d 177, 263 N.E.2d 473, a new trial within 55 days after a mistrial was not deemed to be an unreasonable time."

It should be pointed out further that the statutory requirement is not coextensive with constitutional safeguards. In *People v. Nowak,* 45 Ill. 2d 158, 161, 258 N.E.2d 313, 315, the court said:

> "This statute is designed to implement the right to a speedy trial as guaranteed by the State and Federal constitutions. [Citations.] While the statutory requirement cannot be said to be co-extensive with the constitutional safeguards [citations], compliance with the statute usually operates to prevent constitutional questions of speedy trial from arising, *since the constitutional safeguards protect only against arbitrary and oppressive delays."* (Emphasis added.)

■■ Since in the instant case the delay was occasioned initially by the defendant; and since the State advanced plausible reasons for the 82-day delay, including a crowded court docket, and the trial was held only 44 days after the expiration of the 120-day period, we cannot say from the record in the instant case that the delay was unreasonable or that it was arbitrary and oppressive.

■■ Defendant next claims that eyewitnesses could not have viewed him properly since the lights in the tavern were poor, that he was selected from an unfair lineup and that the evidence of the State's witnesses was contradicted by his alibi. The record does not support defendant's contention that the two eyewitnesses, particularly witness Irene Merritts, did not view defendant under conditions which would permit them to make a positive identification. They both viewed the defendant over an extended period of time while he was in the bar. Witness Merritts, as the testimony shows, had reason to observe the defendant closely and on one occasion witness Lewis also had reason to view him closely.

In *People v. Bennett,* 9 Ill. App. 3d 1021, 1025, 293 N.E.2d 687, 690-91, it was stated: "* * * an identification by only one eyewitness to a crime is sufficient to justify a conviction even where defendant asserts

an alibi defense if the witness is certain about the identification and is credible." The court in *Bennett* also remarked: "It is well established in Illinois that minor omissions or discrepancies in description do not necessarily affect the validity of an identification although they may affect the weight to be given to the evidence. [Citation.]" Continuing further the court in *Bennett* quoted from *People v. Ervine,* 64 Ill. App. 2d 82, 87, 212 N.E.2d 346, 349, where the court said:

> "'[I]t is contrary to human experience to make an identification by noticing first the separate features, hair, or clothes of a person, and then, somehow, running off a total to determine recognition or non-recognition. Ordinarily all features are viewed at once and the recognition made instantaneously or not at all.'" 9 Ill. App. 3d 1021, 1025.

In a recent opinion, *People v. Jones,* 60 Ill. 2d 300, 307, 308, 325 N.E. 2d 601, 605, our Supreme Court stated:

> "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made."

In *People v. Ortiz,* 22 Ill. App. 3d 788, 793, 317 N.E.2d 763, 767, the court said:

> "The proper test to be applied is not whether the witness gave a full description of the features and attire of the defendant at the time of the crime but whether the witness was close enough to the defendant for a sufficient length of time under adequate lighting conditions to be able to make a positive identification."

Based on the evidence in this case we cannot say that the trial court erred in accepting the recognition and identification testimony.

■■ Regardless of defendant's complaints about the lineup procedure we do not find that it tainted the identification made by eyewitnesses at the trial. In *People v. Guyton,* 114 Ill. App. 2d 394, 403, 252 N.E.2d 665, 670, the court said:

> "If the lineup procedure followed here can be found wanting, we find no prejudice to the defendant. The 'in-court identification' of defendant by Gooden was positive and based upon his personal observation of the defendant while the robbery was in progress, and it was not tainted by the lineup procedure."

With respect to defendant's alibi, it is well established that a jury may accept a positive eyewitness identification though such testimony is controverted by defendant's alibi testimony. In the instant case several members of the defendant's family and the defendant's girlfriend testified that he was at home during the time the robbery was alleged to

have taken place. In *People v. Watkins*, 3 Ill. App. 3d 560, 563, 278 N.E. 2d 156, 158, it was said: "We think that the jury could properly weigh the testimony of Mrs. Abolins against defendant's alibi evidence and determine that Mrs. Abolins testimony was more credible." In *Watkins* several persons testified that the defendant had traveled from Illinois to Detroit, Michigan a few days before the date of the crime, and three witnesses testified that he was in Detroit with them on the night of the crime.

■■ Defendant also claims that the gun was improperly admitted into evidence. We do not believe that admission of the gun, although it may have been improperly admitted, was prejudicial to the defendant. The gun admitted matched the description given by two eyewitnesses. Also, it was the gun found at defendant's residence although testimony indicated that it belonged to Witherspoon, the party with whom he was arrested three days after the robbery and the party who had been sitting at the bar prior to the robbery. In *People v. Jones*, 22 Ill. 2d 592, 600, 601, 177 N.E.2d 112, 116-17, the court said:

> "Thus the question is not whether the gun was in the possession of the defendant, but rather whether the gun had been sufficiently connected with the crime and the defendant to make it relevant as evidence. Here an eye-witness to the crime testified that he saw defendant fire a gun at Chevers and described the gun as a long-barrelled chrome-plated gun. People's exhibit No. 3 was such a gun. The witness was shown People's exhibit No. 3 and testified that it looked like the gun he had seen in defendant's hands. The gun in question was found under the front seat of the automobile in which defendant was riding at the time he was arrested. Under these circumstances, we think the gun was sufficiently connected with the defendant and with the crime to make it relevant as evidence, and the trial judge did not err in allowing it to be admitted into evidence."

In *People v. Ashley*, 18 Ill. 2d 272, 280, 164 N.E.2d 70, 74, the court said: "\* \* \* [T]he admission of a weapon may be proper, although it is not found in the possession of the defendant at or near the time of his arrest." The court in *Ashley* stated further:

> "[A] weapon may be admitted in evidence where there is proof to connect it with the defendant and the crime. However, it is not necessary to establish that the particular weapon was the one which was actually used. Where the proper connection is established and it is shown that defendant possessed a weapon which could have been used in the commission of the crime, it may be admitted in evidence."

■■ Defendant further claims that the State's Attorney made prejudicial remarks in his closing argument and that therefore the conviction should be reversed and the cause remanded for a new trial. We do not agree. Defendant's principal contention is that remarks of the State's Attorney were such as to lead a jury to believe that the burden was on the defendant to prove his innocence rather than on the State to prove the defendant's guilt. Defendant cites several remarks made by the State's Attorney, including "Now I ask you, ladies and gentlemen, on all of the evidence, is it reasonable, is it reasonable for you to doubt the guilt of the defendant?"

Other statements were:

"Be reasonable and ask yourself when you are considering the evidence, is it reasonable for me to doubt the guilt of the defendant?"

"It's proof beyond a reasonable doubt and is not reasonable for you to doubt it."

Defendant cited two other remarks of a similar vein made by the State's Attorney.

In our opinion the State's Attorney was not trying to make the jury believe that the defendant had the burden of proving his innocence but was rather trying to make them believe that the State's Attorney had met the burden of proving the defendant guilty beyond a reasonable doubt and was asking the jury to so find. Juries are not so naive as to be unable to discount the emotional appeals by attorneys in their summations. Moreover, the jury was properly instructed regarding the proper burden of proof.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

KARNS, P. J., and G. J. MORAN, J., concur.