THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILFRED LEE WILLS, Defendant-Appellant.

Second District   No. 86—0035

Opinion filed March 13, 1987.

W. Randal Baudin, of Madsen, Baudin & Briscoe, of Crystal Lake, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Wilfred Lee Wills, was convicted of aggravated assault following a jury trial in McHenry County. On appeal, defendant contends that his right to a speedy trial was denied, he was denied a fair trial on account of the individual or cumulative effect of several errors occurring during trial, and he was not proved guilty beyond a reasonable doubt. We affirm.

On March 16, 1984, Wilfred Wills was charged with committing aggravated assault and possessing a firearm without a firearm owner's identification card. The charges stemmed from an incident occurring on January 9, 1984, in which Wills allegedly threatened Sgt. James Connelly by pointing a revolver at him.

On December 19, 1984, Wills, who was free on bond, filed a demand for speedy trial. (Ill. Rev. Stat. 1983, ch. 38, par. 103—5.) The cause proceeded to a jury trial 104 days later on April 2, 1985. At the close of the prosecution's case, Wills' motion for directed verdict on the firearm charge was granted. On April 4, 1985, a mistrial was declared on the aggravated-assault charge because of a hung jury.

On August 28, 1985, Wills sought dismissal of the aggravated-assault charge on speedy-trial grounds. This motion was denied, and the cause proceeded to retrial on September 3, 1985, 152 days after the mistrial declaration.

Prior to the retrial and pursuant to a motion *in limine* filed by Wills, the trial court entered a written order prohibiting, *inter alia*, the prosecution from probing into a separate criminal act by the defendant which allegedly occurred at his home approximately one-half hour before the incident with Sgt. Connelly. The specific incident precluded from the jury's consideration involved Wills' alleged pointing of a gun at his wife during a domestic dispute.

During its opening statement, the State informed the jury that defendant's wife and son would both testify that 15 minutes or so before the incident, they observed the gun and heard defendant say, "If I go, you are going with me." Based on this testimony, the prosecutor concluded that "it doesn't surprise any of us that he [Wills] pointed it at Sgt. Connelly." At trial, Mrs. Wills did not testify regarding this statement; the defendant's son did not testify at all.

Mrs. Wills did testify that she had had an argument with her husband and had seen a gun. Mrs. Wills stated that her husband said he would not go to jail; she did not recall any other statements. A couple of hours after the incident, Mrs. Wills stated that two or three detectives came to her home and showed her a gun which she identified as the gun her husband had when he left the home.

Sgt. James Connelly of the McHenry County sheriff's department testified that at approximately 12 p.m. on January 9, 1984, he received a radio dispatch concerning a domestic situation in Lake-in-the-Hills. Connelly responded to the call, and, as he approached the scene, he encountered Officer Eppley, who was in his patrol car searching for the suspect. Eppley advised Connelly that the suspect was carrying a weapon. Connelly joined the search and proceeded to a fenced area behind the Caputo Construction Company. When Connelly did not observe the suspect, he proceeded to the front of the building to rejoin Eppley. En route, a police dispatch advised that the suspect might be in the area of Caputo Construction. Connelly turned around and returned to the back area of Caputo Construction.

As Connelly pulled into the area, he observed Wills come out from behind a white truck and approach the front of the squad car, pulling a weapon out of a holster. Connelly slammed the vehicle into park and grabbed the radio. Wills continued to approach the police car at a fast walk, pointing the weapon. Connelly opened the car door and started to get out, at the same time removing his service revolver. As he was getting out Connelly said, "Police. Freeze. Police. Freeze. Drop the gun." By this time, Wills was 7 to 8 feet away from Connelly to the left portion of the car in a dark area outside the shine of the headlights. As Connelly said, "Drop the gun," Wills swung around and pointed his gun at Connelly and said, "F--- you." Connelly, fearing he would be shot, fired two shots at Wills, striking him in the abdomen and the right arm. At the time he shot Wills, Connelly said he observed Wills' shoulder area and the weapon. After the shots were fired, Wills spun to the right and landed on his stomach.

Deputy sheriff John Eppley corroborated Connelly's testimony concerning their search for the suspect. Eppley added that he arrived

on the scene right after Connelly fired the shots and observed Wills on the ground.

Detective Chris Pandre stated that he arrived on the scene sometime after the incident and obtained the weapon allegedly carried by Wills. Pandre took the gun to Wills' home and asked Mrs. Wills whether she could identify the weapon. According to Pandre, Mrs. Wills started to cry and said, "That's the gun. That's the one he pointed at me." Defense counsel moved for a mistrial, which was denied.

The defense case opened with testimony by Dr. Powers concerning his treatment of a bullet wound that entered the left upper quadrant of Wills' abdomen. Dr. Scafuri then testified that he treated a bullet wound to Wills' right forearm that entered the back side of the forearm and exited the front side of the forearm. The court permitted Wills to demonstrate the point of entry of his wounds by allowing him to place yellow stickers on his shirt over the entry points. The court precluded Wills from demonstrating the actual wounds to the jury.

Before trial commenced the following day, Judge Arnold advised counsel and the defendant that due to an unexpected illness, presiding Judge Hutchinson would be unable to continue. Both defense counsel and the prosecution consented to the substitution of Judge Arnold, who had presided over Wills' first trial. Judge Arnold admonished Wills concerning the substitution. Wills assured the court that he had no objection to proceeding.

William Feffer was then called by the defense to testify regarding a videotaped test firing of a weapon similar to the one used by Officer Connelly under allegedly similar conditions. The purpose of this evidence was to refute. evidence presented during the prosecution's case in chief showing that the spent shell casings landed on the hood of Connelly's car. The trial court viewed the videotape and determined that it was not sufficiently accurate and its potential to mislead the jury outweighed its evidential value. The court prohibited the videotape from admission into evidence as well as any testimony concerning the test firing.

Wilfred Wills stated that he left his house around midnight on the night in question with a firearm to go to his car, which was in a parking lot two blocks away. While he was trying to locate the keys to the car, Wills observed police cars approaching. Wills decided to hide behind the building housing the Caputo Construction Company. While he was making his way to a hiding place, Wills slipped and fell on the snow. He stated he was lying face down when a car approached him. Wills looked up and observed light in his face. He then heard two

shots fired. At that moment, his arms were extended and his knees were in a push-up position, his left side was exposed to the light. Defendant was precluded from physically demonstrating his position on the ground when he was shot. Wills denied that anyone warned him to freeze and drop the gun. He also denied that he pointed a gun at a police officer.

Judge Arnold instructed the jury. During deliberations the jury foreman sent out a note requesting "all police statements that were documented at trial." The court notified counsel of the note and after entertaining comments by each side, sent back his written response denying the jury's request. The record also indicates that the jury sent out a note requesting a large magnifying glass. There is nothing further in the record concerning this request.

The jury found Wills guilty of aggravated assault, and he was later placed on six months' probation, ordered to perform 100 hours' community service, and fined $100. Wills' sentence was stayed pending appeal. Defendant raises 11 issues on appeal.

Defendant first contends that the delay between mistrial and retrial violated his constitutional and statutory right to a speedy trial. The State responds that the defendant's statutory right to a speedy trial is not in issue, the delay was adequately explained, and defendant did not suffer any prejudice as a result of the delay.

Defendant was charged on March 16, 1984, and released on bond. On December 19, he made a written demand for speedy trial. The cause proceeded to trial on April 2, 1985, and on April 4, a mistrial was declared. Retrial commenced on September 3, 1985, 152 days after the mistrial declaration.

■ In deciding whether a defendant's speedy-trial rights have been infringed upon after a mistrial has been declared, we are concerned with the constitutional right to a speedy trial (U.S. Const., amend. VI), rather than the statutorily prescribed time limitations set out in section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5). (*People v. Bazzell* (1977), 68 Ill. 2d 177, 182, 369 N.E.2d 48.) Although section 103—5 implements the constitutional right to a speedy trial, the two are not coextensive. However, even though a determination of whether the constitutional right to a speedy trial has been violated is a judicial question, the time limitation prescribed by the legislature may nevertheless be considered. 68 Ill. 2d 177, 181, 369 N.E.2d 48; *People v. Love* (1968), 39 Ill. 2d 436, 443, 235 N.E.2d 819.

■ While the constitutional right to a speedy trial cannot be defined by a precise standard of time, the period between mistrial and

retrial must be a reasonable one. (*People v. Bazzell* (1977), 68 Ill. 2d 177, 181, 369 N.E.2d 48; *People v. Dixon* (1980), 87 Ill. App. 3d 814, 817, 410 N.E.2d 252.) In determining whether a defendant was retried within a reasonable time, the record in its totality must be examined. (*People v. Aughinbaugh* (1973), 53 Ill. 2d 442, 446, 292 N.E.2d 406.) Four factors should be considered: (1) the length of the delay, (2) the reasons for the delay, (3) the prejudice to defendant, and (4) whether defendant waived the right. *People v. Bazzell* (1977), 68 Ill. 2d 177, 182, 369 N.E.2d 48.

■ The length of delay between the mistrial and retrial in the present case was 152 days, which is sufficiently long to "trigger" inquiry into the remaining three factors. *Barker v. Wingo* (1972), 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182; 2 W. LaFave & J. Israel, Criminal Procedure sec. 18.2, at 405 (1984).

As to reasons for the delay, the defendant contends the delay is unexplained. The State disputes this contention, relying on the reasons enunciated by the trial court, which centered on a crowded court docket caused in part by a large number of substitutions taken from one of the McHenry County judges. While the State concedes that a crowded court docket is not attributable to the defendant for statutory purposes, it contends this is an adequate reason for a delay between mistrial and retrial.

■ In the constitutional context, a congested court docket has been described as a more neutral reason for delay than the State's deliberately attempting to delay trial and consequently is weighed less heavily against the State. (*Barker v. Wingo* (1972), 407 U.S. 514, 531, 33 L. Ed. 2d 101, 117, 92 S. Ct. 2182; 2 W. LaFave & J. Israel, Criminal Procedure sec. 18.2, at 406-08 (1984).) We have recognized that in certain circumstances a crowded court docket is a plausible reason for delay. (See *People v. Johnson* (1976), 36 Ill. App. 3d 122, 126, 343 N.E.2d 177 (82-day delay between mistrial and retrial was not unreasonable where State advanced plausible reasons for the delay, including a crowded court docket).) While we recognize that the delay in the instant case was considerably longer than in *Johnson*, nonetheless, the congestion of the court docket in McHenry County provides some explanation for the lengthy delay in the instant case.

■ The third factor to be considered is prejudice to the defendant. Prejudice must be assessed in light of the principal purposes behind the constitutional right to a speedy trial: (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize the anxiety and concern that accompany public accusation, and (3) to avoid impairment of the defendant's ability to defend himself. (*Smith v. Hooey*

(1969), 393 U.S. 374, 378, 21 L. Ed. 2d 607, 611, 89 S. Ct. 575,; *People v. Henry* (1970), 47 Ill. 2d 312, 315, 265 N.E.2d 876.) Here, the defendant was free on bond during the entire proceeding and has made no claim that his defense was impaired in any way by the delay. While defendant asserts that anxiety and concern about the pending charge prejudiced him, this factor is present to some extent in every case and absent some unusual showing, this inconvenience alone is of slight import. 2 W. LaFave & J. Israel, Criminal Procedure sec. 18.2, at 410 (1984).

The final factor to be considered is whether defendant waived the right to a speedy trial. In the present case, defendant filed a written demand for a speedy trial nine months after he was arrested.

██ Based on our review of the record, we conclude that the defendant's constitutional right to a speedy trial was not violated. Of primary importance is the lack of prejudice. Defendant does not suggest that his defense was hampered in any way by the delay nor was he incarcerated during the period of delay. The latter factor distinguishes this case from *People v. Aughinbaugh* (1973), 53 Ill. 2d 442, 292 N.E.2d 406, the principal case relied on by defendant. In *Aughinbaugh*, the 120-day delay between mistrial and retrial was found to be clearly unreasonable where the defendant was incarcerated during the entire period. The substantial deprivation of liberty occasioned in *Aughinbaugh* is not a concern here.

While the remaining three factors weigh in favor of the defendant, they do not weigh heavily enough against the State to warrant finding a constitutional violation of the defendant's right to speedy trial. The delay, albeit lengthy, fell within the statutory period and the reason for the delay, a crowded court docket, was far less egregious than a showing of deliberate delay by the State. By our holding, we are not condoning the considerable delay occurring below, nor are we implying that a defendant cannot prevail on a constitutional speedy-trial claim absent a showing of prejudice. Rather, under the particular circumstances of this case, we are of the opinion that the defendant's constitutional right to a speedy trial was not violated.

██ Defendant next contends that a mistrial should have been ordered when Judge Hutchinson became ill prior to the conclusion of the evidentiary phase of trial and was unable to continue. The State responds that the defendant has waived this contention by consenting to the substitution of Judge Arnold.

Following the third day of trial and during the defense case in chief, presiding Judge Hutchinson was stricken with appendicitis. Judge Arnold notified the parties of this matter prior to the scheduled

338

resumption of trial and entertained argument on whether a mistrial should be declared. Both defense counsel and the prosecutor advised the court that they wished to continue and did not object to Judge Arnold's substituting as judge. The court then admonished the defendant concerning the situation. The defendant, in the presence of counsel, advised the court that he wished to continue with the trial and acknowledged waiving any objection to proceeding. Judge Arnold had presided over the first trial of defendant which resulted in a mistrial due to a hung jury.

While acknowledging that he consented to the substitution of Judge Arnold, defendant argues that the right to have the same judge preside over the entire trial is so fundamental that a defendant's consent to a substitution of judges during the evidentiary phase should not be given effect. In support of this proposition, defendant points to several alleged errors committed by Judge Arnold that were directly attributable to his not having heard the evidence presented before Judge Hutchinson.

Whether a defendant can consent to the substitution of judges after the introduction of evidence and prior to the jury's retiring for deliberations has not been directly addressed in Illinois. The cases relied on by defendant in support of his argument are distinguishable. In *Meredeth v. People* (1877), 84 Ill. 479, the supreme court held that a defendant's consent was immaterial where two members of the bar substituted for the judge during closing arguments. In *Durden v. People* (1901), 192 Ill. 493, 61 N.E. 317, the supreme court held that the substitution of judges during closing arguments was reversible error where the defendant objected to the substitution. In *People v. Mays* (1962), 23 Ill. 2d 520, 179 N.E.2d 654, the substitution occurred after the jury retired for deliberations. The court upheld the substitution on grounds that no prejudice was shown and the defendant had failed to object to the substitution.

Although not specifically addressed in Illinois, the question of whether a defendant can consent to the substitution of judges during the evidentiary phase of trial has been answered affirmatively in other jurisdictions. (*Journigan v. State* (1960), 223 Md. 405, 164 A.2d 896, *cert. denied sub nom. Gardner v. Maryland* (1961), 365 U.S. 853, 5 L. Ed. 2d 817, 81 S. Ct. 818; *State v. McCray* (1920), 189 Iowa 1239, 179 N.W. 627; *Burrage v. State* (1912), 101 Miss. 598, 58 So. 217; see Annot., 83 A.L.R.2d 1032, 1035-37 (1962).) We agree with the rationale set forth in *Journigan* that permitting the defendant to waive the right to have the same judge throughout the entire proceedings is consistent with allowing a defendant to waive other constitu-

tional guarantees such as a lawyer, a jury, confrontation of witnesses, and speedy trial. (*Journigan v. State* (1960), 223 Md. 405, 407-12, 164 A.2d 896, 898-900.) In view of the defendant's ability to waive the foregoing important constitutional rights, we find that the right to a trial with the same judge is not so fundamental that the accused cannot waive it. 223 Md. 405, 412, 164 A.2d 896, 900.

Here, both defense counsel and defendant, in the presence of counsel, explicitly consented to the substitution of Judge Arnold. Having validly consented to the substitution, defendant has waived any challenge to the substitution of judges. Aside from the matter of consent, we note that Judge Arnold was familiar with the case, having heard the first trial. In addition, defendant's claims of prejudice resulting from the substitution are without merit; these claims will be addressed in detail later in this opinion. In this regard, it is noteworthy that several of the rulings made by Judge Arnold of which defendant complains were raised in his post-trial motion and upheld by Judge Hutchinson.

■■ ■ Defendant's third contention is directed to a violation of a pretrial court order prohibiting reference to the defendant's alleged pointing of a gun at his wife some 30 minutes before the occurrence of the offense charged. On direct examination, Detective Pandre testified that he took the gun found at the scene to defendant's home to ascertain whether defendant's wife recognized the weapon. The following colloquy ensued:

Q. [Assistant State's Attorney] And what did she do when you did that?

A. She started to cry and said, "That's the gun. That's the one that he pointed at me."

Defendant objected and moved for a mistrial which was denied.

Defendant argues that this intentional violation of the court's pretrial order was so prejudicial as to warrant a mistrial. The State contends that since the defendant did not request a limiting instruction and his allegations of prejudice are speculative and conjectural, he has failed to meet his burden of showing manifest necessity for a mistrial.

The decision to declare a mistrial rests within the discretion of the trial court and will not be disturbed on review unless there has been an abuse of discretion. (*People v. Campbell* (1984), 126 Ill. App. 3d 1028, 1036, 467 N.E. 2d 1112.) To prevail on appeal, defendant must establish that there was a manifest necessity for the mistrial or that the ends of justice would be defeated by continuance of the trial; that is, that the jury was so influenced and prejudiced that it would not, or could not, be fair and impartial, and the damaging effect of the evi-

dence could not be remedied by admonitions or instructions. *People v. Winfield* (1983), 113 Ill. App. 3d 818, 839, 447 N.E.2d 1029.

Here, the trial court agreed that the statement made by Detective Pandre violated the pretrial order; however, it declined to grant a mistrial because it determined that no actual damage or prejudice was established by the defendant. Defendant did not request the court to instruct the jury to disregard the remark and does not argue that the error could not have been cured by appropriate instruction to the jury. While the remark was clearly inappropriate, it was isolated and found by the trial court not to be an intentional violation of the pretrial order. No further reference to the precluded subject matter was made before the jury. In light of these circumstances, the defendant has failed to establish that the inappropriate remark of witness Pandre was sufficiently prejudicial to warrant the declaration of a mistrial.

■ Defendant next argues that he was denied a fair trial when the court ruled that he could not display the wounds he sustained as a result of being struck by the two shots fired by Sgt. Connelly. Defendant was struck in the left side of his abdomen and the posterior side of his right forearm. The defense case centered on defendant's testimony that he was lying down on the ground when he was shot and was not squared off at the shoulders facing Connelly. Defendant asserted that displaying the entry wounds to the jury would corroborate his testimony and discredit Sgt. Connelly's. The trial court precluded defendant from displaying the actual wounds to the jury; however, it did allow defendant to place yellow stickers on his shirt directly over the points of entry.

The State argues that the use of the stickers to mark the position of the wounds accomplished the purpose sought by defendant. Defendant argues that the uncertainty, shifting, and movement of defendant's shirt deprived him of presenting the best evidence of the actual entry wounds.

Support for defendant's claim is not found in the record before this court. There are no photographs of defendant with the stickers on his shirt, nor was there any objection during the demonstration to the jury that the stickers were distorting the actual entry position. Absent any showing to the contrary, the defendant's purpose in demonstrating his wounds to the jury was presumably accomplished by the use of the stickers. Consequently, we find no error in the court's ruling on this matter.

■ The defendant's second evidentiary challenge addresses the court's refusal to allow defendant to demonstrate his alleged position on the ground when he was shot. Defendant maintains that the

court's ruling was prejudicial for two reasons: first, defendant was unable to articulate his position, and second, Sgt. Connelly was permitted to demonstrate defendant's position at the time of the shooting.

During defendant's testimony, counsel asked the defendant whether he recalled his position when he first had an indication that he was shot. Before defendant answered the question, counsel requested a demonstration, with the court's permission. The prosecution objected and the court denied the request, advising defendant that he could testify to his position. Defendant then stated, "Arms extended, maybe not fully, and on my knees in a push-up position." Counsel later made specific inquiry into the location of defendant's right arm. Defendant said it was off to the right though not exactly and then said he did not know how to explain it.

In the prosecution's case in chief, Sgt. Connelly indicated the position of the defendant's hands when defendant pointed the gun at Connelly. No objection was made. On cross-examination, defense counsel elicited additional demonstrations by Sgt. Connelly regarding defendant's hand position.

Defendant was provided a fair opportunity to testify concerning his position at the time he was shot. He stated that his arms were extended, maybe not fully, and he was on his knees in a push-up position. We believe this testimony was sufficient to communicate to the jury his position at the time the shots were fired. Regarding defendant's alternative contention, it is important to note that defendant did not object to Connelly's demonstrations during cross-examination. Defense counsel's failure to object precluded a ruling by the trial court during Connelly's demonstration. In any case, even if the rulings are seen as inconsistent, the defendant was not sufficiently prejudiced so as to warrant reversal on this basis.

██ ■ Defendant's final evidentiary challenge takes exception with the court's ruling denying the admissibility into evidence of a videotape prepared by the defense. The videotape consisted of test firings of a weapon similar to the one used by Officer Connelly under allegedly simulated conditions. The purpose of the videotape was to refute the State's photographic and testimonial evidence depicting the two spent shell casings on the hood of Sgt. Connelly's patrol car. Defendant was attempting to prove that Connelly was not in the position he said he was when the shots were fired. The trial court precluded presentation of the videotape because it determined the test firing was inaccurate and misleading.

"Experiments may be received into evidence if probative of facts

in issue and were conducted under substantially similar conditions and circumstances as those which surrounded the original transaction of occurrence. [Citations.] The admissibility of experimental evidence is a matter within the discretion of the trial court. A reversal is not warranted unless the clear abuse of discretion is demonstrated. [Citation.]" *People v. Carbona* (1975), 27 Ill. App. 3d 988, 1003-04, 327 N.E.2d 546.

Here, the test-firing experiment was directed at discrediting the testimony of Sgt. Connelly. However, the trial court found that the experiment did not accurately represent the conditions and circumstances surrounding the original occurrence. Specifically, the weapon and car used in the experiment were different and the physical position of the test shooter was significantly altered from the position testified to by Sgt. Connelly. Based on these differences, the court found that the evidentiary value of the tape was outweighed by the misleading effect the tape would have on the jury. Our review of the record indicates that the trial court's ruling on this matter was not an abuse of discretion. *People v. Lonzo* (1977), 47 Ill. App. 3d 939, 942-43, 365 N.E.2d 528.

Defendant next argues that the failure of the prosecution to present evidence supporting a comment it made during its opening statement resulted in reversible error. In its opening statement, the prosecutor commented that Mrs. Wills and defendant's son would both testify that before defendant left their home, he stated: "If I go, you are going with me." The prosecutor concluded that based on this testimony, "it doesn't surprise any of us that he [Wills] pointed it [the gun] at Sgt. Connelly." Mrs. Wills did not testify to this statement and her son did not testify at all.

An opening statement in a criminal case should be an outline of the facts which the prosecution in good faith expects to prove. (*People v. Cruz* (1983), 119 Ill. App. 3d 868, 882, 457 N.E.2d 1281.) It is improper, at least with foreknowledge, to include matters in an opening statement which are not thereafter proved. (*People v. Platter* (1980), 89 Ill. App. 3d 803, 824, 412 N.E.2d 181.) However, reversible error occurs only where such impropriety is attributable to the deliberate misconduct of the prosecution and results in substantial prejudice to defendant. *People v. Trass* (1985), 136 Ill. App. 3d 455, 465, 483 N.E.2d 567.

Here, there is no indication of deliberate misconduct on the part of the prosecutor. At trial, Mrs. Wills recalled a different statement made by defendant before he left, but did not recall any others. The prosecutor had no way of knowing beforehand that Mrs. Wills' mem-

ory would fail on this point. With regard to the failure of defendant's son to testify, the record indicates that a subpoena problem was the reason why defendant's son did not take the stand. Based on these circumstances, there is insufficient evidence to demonstrate deliberate misconduct by the prosecutor. Moreover, the prejudice, if any, engendered by this remark is insufficient to warrant reversal.

█ The defendant's eighth assignment of error addresses the trial court's denial of a jury request during deliberations for "all police statements that were documented in the trial." The trial judge notified counsel of the jury's written request and advised counsel that his proposed response was, "[Y]ou have all documents that were introduced into evidence. You must rely upon your recollection of any other statements. No further documents will be provided." The court then entertained comments by counsel regarding the proposed response. Defense counsel concluded that certain statements should be made available to the jury. The prosecution disagreed. After the comments, the court stated it was comfortable with its response "based upon the law as I have seen in numerous appellate court opinions, and that is exactly the same type of question has [sic] been made by various jurors. And the appellate court has routinely indicated that the proper response is that they—they got what they got, and they are not going to get any more," and was going to send it to the jury. The prosecutor then inquired of the court whether it was exercising its discretion "in terms of sending in a note as this being your response?" The court answered affirmatively.

On appeal, defendant argues that a fair reading of the record indicates that the court felt it had no discretion in responding to the jury's inquiry based on the court's reference to the proper response dictated by the appellate court. Defendant contends the prosecutor's question regarding discretion addressed advising the jury in writing or orally of the response, rather than the substance of the response. The State argues that the court clearly realized it had discretion in responding to the jury question, the response was correct and, in any event, the defendant waived this issue by not objecting to the response when it was proposed or including it in his post-trial motion.

Initially, the State correctly points out that defendant did not include this issue in his post-trial motion. In addition, while defendant did comment on the proposed response, he did not make a formal objection to the response. Under these circumstances, defendant has waived consideration of this issue. *People v. Boyd* (1980), 88 Ill. App. 3d 825, 861, 410 N.E.2d 931; *People v. Whitley* (1977), 49 Ill. App. 3d 493, 499, 364 N.E.2d 511.

Aside from waiver, defendant's claim is without merit. In *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, our supreme court held that error occurs when a trial court refuses to exercise discretion in responding to a jury question. In *Queen*, the jury requested the "defendant's words on the stand." The court replied, "You must decide on the basis of the testimony heard in the courtroom. I *cannot* have any testimony of any witness read to you." (Emphasis added.) (56 Ill. 2d 560, 565, 310 N.E.2d 166.) The supreme court concluded that the trial court had committed error.

Here, the trial court's response does not indicate that it erroneously believed it did not have any discretion in responding to the jury's request. Furthermore, the court's comment relied on by defendant does not indicate that the court lacked authority to honor the request (*People v. Whitley* (1977), 49 Ill. App. 3d 493, 499, 364 N.E.2d 511), rather it is merely a reference to the approval the appellate court has given to the form of the response proposed. In addition, defendant's interpretation of the prosecutor's question concerning discretion is unduly strained. A review of the record in its totality does not support defendant's claim of error.

Defendant's next argument arises from a note written by the foreman of the jury contained in the common law record stating: "Need large magnifying glass." There is no reference to this note in the report of proceedings. Defendant argues that because he was not informed of the request by the jury and the response, if any, by the trial judge, the court committed reversible error. The State argues that this issue is waived, there is no record supporting defendant's claim and defendant has failed to demonstrate any prejudice.

Initially, the State's waiver argument is without merit. In *People v. Rhoden* (1981), 101 Ill. App. 3d 223, 226, 427 N.E.2d 1292, a similar issue was found not to be waived for purposes of appeal because defendant was unaware of the communication when the post-trial motion was filed. Like circumstances exist here.

While communication between the court and jury during deliberations outside the presence of defendant or his trial counsel is improper, such communications are not conclusively prejudicial. (*People v. Stropoli* (1986), 146 Ill. App. 3d 667, 674, 497 N.E.2d 194; *People v. Rhoden* (1981), 101 Ill. App. 3d 223, 226, 427 N.E.2d 1292.) Here, however, there is nothing in the record indicating that the judge communicated a response to the jury. While defendant claims in his reply brief that he did not become aware of the note until the common law record was prepared for appeal, to date the defendant has failed to provide any type of record demonstrating that he was prejudiced. Ab-

sent a sufficient record, we must presume that the trial court acted appropriately. (*People v. Smith* (1985), 106 Ill. 2d 327, 334-35, 478 N.E.2d 357.) In this regard, the court in *Rhoden* found that the trial court's *ex parte* denial of a jury request for a magnifying glass to inspect fingerprint exhibits was proper and nonprejudicial. (*People v. Rhoden* (1981), 101 Ill. App. 3d 223, 226, 427 N.E.2d 1292.) Defendant's failure to establish any prejudice caused by the jury request renders this argument meritless.

Defendant next contends that the cumulative effect of the alleged trial errors deprived him of a fair trial, even if no single issue warrants reversing his conviction. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629; *People v. Killian* (1976), 42 Ill. App. 3d 596, 356 N.E.2d 423.) Once again, we disagree with defendant. Although numerous errors were alleged by defendant, our disposition of his contentions demonstrates that all but one of the errors complained of were without merit. As to the one contention raised by defendant that involved error, *i.e.*, the violation of the pretrial order, we have already determined that this error does not warrant reversal. The cumulative-error doctrine is inapplicable to the present case.

Defendant finally contends that he was not proved guilty beyond a reasonable doubt because certain physical evidence contradicted the testimony of Sgt. Connelly. Specifically, defendant asserts that the location of the entry wounds discredits Sgt. Connelly's testimony that defendant was squared off in front of Connelly when the shots were fired. The evidence at trial established that defendant was shot in the upper left quadrant of his abdomen and the posterior side of his right forearm. Defendant also asserts that Sgt. Connelly's testimony at trial indicated conclusively that he fired only one shot, whereas defendant was struck with two bullets.

A jury's verdict of guilty will not be disturbed on review unless it is so improbable or palpably contrary to the evidence so as to raise a reasonable doubt of guilt. (*People v. Nally* (1985), 134 Ill. App. 3d 865, 868, 480 N.E.2d 1373.) Issues as to weight of the evidence or the credibility of the witnesses are matters for the trier of fact to determine, and a court of review will not normally substitute its judgment in that regard. *People v. Viano* (1985), 139 Ill. App. 3d 560, 566, 487 N.E.2d 623; *People v. Chacon* (1984), 125 Ill. App. 3d 649, 655, 466 N.E.2d 374.

Defendant's challenges to the sufficiency of the evidence go to weight and credibility. Regarding the entry wounds, the description of their location indicates that this evidence was insufficient to undermine the jury's verdict. The location of the entry wounds is not so im-

probable as to discredit Connelly's testimony. This is a question going to the weight of the evidence and is not reason enough to disturb the jury's verdict.

Similarly, Connelly's testimony concerning the number of bullets remaining in the chamber after he fired the gun is a matter reflecting on credibility. A review of the record indicates that Connelly may have been confused even though he seemingly gave a definitive answer. Other evidence at trial indicated that the appropriate number of rounds remained assuming two shots were fired. In any case, this point is of minor import and does not warrant disturbing the jury's verdict.

Our review of the record indicates that the evidence presented at trial was sufficient to establish beyond a reasonable doubt that defendant was guilty of aggravated assault.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.