THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH E. FAUBER II, Defendant-Appellant.

Fourth District   No. 4—93—0425

Argued September 13, 1994.—Opinion filed September 30, 1994.

Daniel D. Yuhas and Judith L. Libby (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Rob-

ert J. Biderman, and Elliott Turpin (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On November 4, 1992, an indictment was returned in the circuit court of Woodford County which, in separate counts, charged defendant Kenneth E. Fauber II with (1) aggravated battery by committing a battery in which he knowingly or intentionally caused great bodily harm to Chris Johnson (720 ILCS 5/12—4(a) (West 1992)); (2) aggravated battery by committing a battery on Chris Johnson, who was then on a public way (720 ILCS 5/12—4(b)(8) (West 1992)); and (3) mob action (720 ILCS 5/25—1(a)(1) (West 1992)). On January 23, 1993, after a jury trial, the court entered judgments on a verdict finding defendant not guilty of the aggravated battery charges but guilty of mob action. On March 11, 1993, the court sentenced defendant to six days' incarceration, 30 months' probation, and three months of home confinement.

Defendant has appealed, contending: (1) the evidence did not support the conviction of mob action; (2) the court erred in instructing the jury in regard to the proof of defendant's guilt of mob action by accountability; and (3) the court erred in admitting into evidence as substantive proof of defendant's guilt the statement of a defense witness which was inconsistent with the testimony of that witness at trial. We hold that (1) the proof was sufficient; (2) no reversible error occurred in the instruction to the jury in regard to accountability; and (3) the court properly admitted the evidence of the prior inconsistent statement as substantive evidence.

■ Section 25—1(a)(1) of the Criminal Code of 1961 defines the type of mob action with which defendant was charged and of which he was convicted as consisting of "[t]he use of force or violence disturbing the public peace by 2 or more persons acting together and without authority of law." (720 ILCS 5/25—1(a)(1) (West 1992).) The violence which occurred here was an attack on Chris Johnson by Brad Grant and at least one other, and a subsequent fight in which Johnson attempted to defend himself. This occurred on the grounds of Metamora High School on October 16, 1992, at approximately 10 p.m. Johnson was a member of the Metamora High School football team, which had played a game that night at Chillicothe and had returned by bus to the Metamora High School.

Johnson testified to the following chain of events after he arrived at the high school grounds and alighted from the bus. He first went into the locker room and returned his playing gear. He then returned to his automobile, which was parked in a school parking lot. He was

waiting in the vehicle for a friend, sitting in the driver's seat. The lighting there was weak. Someone in a green jacket approached, tapped on the window, and asked his name. He rolled down the window and a second person, later identified as Brad Grant, hit him in the face. Johnson then attempted to get out of the vehicle but Grant kept pushing the door and preventing him from getting out. He used his feet to push open the door and the person in the green jacket hit him on the leg as he tried to get out. As he tried to get away, Grant punched him in the mouth and took Johnson to the ground. They then rolled over with Johnson getting on top but someone else kicked Johnson. In the process Grant hit Johnson several other times before some person stopped the fight and Grant left.

Johnson testified that he knew defendant because he had seen him at lunch that day wearing a green jacket. Johnson further stated that he was "pretty sure [defendant] was the one that was kicking [him] when [he] had the door open" and that person was wearing a green coat which was "thin" and "knee high." Johnson maintained that the person described was the only person whom he saw at that time who was wearing a green coat. Johnson also maintained that defendant had been watching him at lunch that day in the school cafeteria.

Johnson's identification of defendant as the person who hit him on his legs was impeached by (1) testimony of Don Seglar that he was present at the episode and saw Chad Doty kick Johnson but that defendant did not punch or kick Johnson; (2) testimony of Mike Casey, Mike Sheets, and Joel Prepejchal to the same effect; and (3) testimony of defendant that he was present at the episode, standing four to five feet from Johnson but did not touch Johnson. Evidence was also presented that both Doty and defendant were wearing green jackets at the time but another witness testified that Doty was wearing a black and purple coat at the time. Johnson's identification of defendant was further questioned by evidence that defendant did not have lunch on the day of the offense during the same period that Johnson did.

Further evidence of defendant's guilt arose from introduction into evidence of a prior inconsistent written statement of Aaron Wood. As we have indicated, and as we subsequently explain, this document was properly admitted into evidence. Wood was called by the State and stated that he was 14 years old and a friend of both Johnson and defendant. He then stated that he was present at the fight, sitting in the front passenger side of defendant's automobile, which was parked near where Johnson and Grant were fighting, but that he did not ever see defendant or Doty participate in the fight. Wood was then presented with the statement which he admitted

signing. Wood then explained that "people were saying a lot of stuff and [he] basically just wrote down what [he] thought had happened that night." That statement provided as follows:

"I Aaron Wood was sitting in [defendant's] car with Don Seglar also in the car. [Defendant] was out of the car while Chris Johnson was walking to Chris' car. Brad hit Chris twice while Chris was in his own car, Chris then jumped out the passenger side door. Chris then ran around to the back of the car and so did Brad. Brad then grabbed Chris and started hitting Chris and brought Chris to the ground. [Defendant] and Chad Doty then ran over to where Brad and Chris were and they both started hitting and kicking Chris then [defendant], Chad and Brad ran back to [their] cars and took off."

On cross-examination, Wood maintained that he could not see much of the fight and Grant was the only person he saw approaching the automobile and he did not see defendant or Doty hitting Johnson. He stated he was now telling the truth and his prior statement was based on what he had heard.

Some corroborating proof of defendant's guilt was from testimony of James Dansart, dean of Metamora High School, in regard to conversations he had with defendant. According to Dansart defendant told him he was present at the fight because he knew it was going to happen and if it became unfair he was going to jump in to keep it fair. Dansart also said defendant admitted that at the time of the fight he wore a green coat and had a metal object in his pants pocket which defendant claimed he used as a counterbalance when hunting. According to Dansart, defendant maintained that he intended to enter the fight to keep it fair only if it occurred at Chillicothe where the game was played and not if it occurred at Metamora. Defendant also admitted he did not hunt on the day of the fight but he had intended to do so.

The parties recognize the standard for review of a criminal conviction requires the evidence to be viewed "in the light most favorable to the prosecution," and if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the conviction must be affirmed. (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276-77.) "Whatever conflicts may have existed in the evidence, resolution of such inconsistencies is wholly within the province of the jury. [Citations.] Moreover, the jury is also entrusted with determinations of credibility." *People v. Sanchez* (1986), 115 Ill. 2d 238, 261, 503 N.E.2d 277, 284.

■ Clearly, Grant and whoever acted with him used "force or violence" against Johnson, "acting together and without authority of law" and disturbed the peace of a large number of people. The person who hit or kicked Johnson's legs as Johnson was attempting to leave the vehicle clearly acted with Grant as a principal. Any "rational" jury could have concluded beyond a reasonable doubt that defendant was that person.

The jury could have believed the prior written statement of Aaron Wood which speaks in terms of a firsthand view of the scene. The jury saw and heard Wood's refutation of that statement and was in a position to determine whether Wood was then telling the truth. As Wood stated, he was a friend of both Johnson and defendant, and the jury could recognize that he could well recant an accurate earlier statement when he became aware of the jeopardy faced by defendant. Moreover, at trial, Wood admitted that he was right next to where Johnson and Grant were fighting. This was inconsistent with his contention that he could not see what was taking place and made his statement upon the basis of what he heard from others. He claimed not to have seen either defendant or Doty kick or hit Johnson although the evidence was very strong that one of them did.

Johnson's identification of defendant as the one who, with Grant, attacked him has some weakness because it was based so much upon the color of that other assailant's coat but evidence was presented that defendant was seen wearing a green coat and that he had admitted this was so. Evidence was also admitted that Doty was not wearing that type of coat at that time. The jury could reasonably have concluded that Johnson's identification of defendant was accurate. The jury could believe that defendant's alleged intent to enter the fight only if it occurred in Chillicothe was not true and could conclude from Dansart's testimony that defendant came on the scene here prepared to fight. This, in turn, was corroborating evidence that defendant did, in fact, enter the fray immediately in aid of Grant.

The evidence was strong enough that "*any* rational trier of fact" after viewing and hearing the evidence, could find that defendant's guilt as a principal was proved beyond a reasonable doubt. We need not decide whether the proof would have supported a verdict of guilty upon a theory of accountability.

However, the major thrust of defendant's argument arises in regard to instructing the jury concerning accountability as it relates to the court's handling of a question sent to the court by the jury during deliberations. Over defense objection, the jury was instructed on the definition of accountability. (Illinois Pattern Jury Instructions,

Criminal, No. 5.03 (3d ed. 1992) (hereinafter IPI Criminal 3d).) The issues instruction in regard to the aggravated battery offense included proof by accountability. The instruction concerning the mob action offense made no reference to accountability. The defense made no objection to the lack of this element in these instructions and did not offer instructions which did. Then, during deliberations, the jury sent a note to the court which stated as follows:

"Does defendant *himself* have to specifically use force or violence to be considered guilty of mob action, or does knowledge and planned involvement of the mob using force determine guilt?" (Emphasis in original.)

A colloquy between court and counsel then took place out of the presence of the jury in language as follows:

"MR. HUSCHEN [Prosecuting attorney]: Can I look at the question or could you read it again. Particularly the last part. I didn't understand it.

MR. LIEKEN [Defense attorney]: Can I see the instruction again?

THE COURT: Which one, mob action?

MR. LIEKEN: Mob action.

THE COURT: State[']s position?

MR. HUSCHEN: Well, I think we should try and clarify it, Your Honor, if they're troubled by it. I don't know the answer as I stand here.

THE COURT: So you think we should make a response, Mr. Lieken?

MR. LIEKEN: No.

THE COURT: Why not? We have to make some response. Would you say either—

MR. LIEKEN: The response being that you just have to rely on the instruction as given. Because in the past whenever I have dealt with I.P.I. instructions it has always been considered to be the safer course just to pretty much leave them alone as they have been given and you just live with them.

THE COURT: Strikes me that the question is answered in the instructions, isn't it. Anybody think it isn't. As a matter of fact, that question—there is an answer in the instructions to that question. It obviously has to do with the accomplice issue. Now, it strikes me that all that presents to us is *a question of whether they're questioning whether the instruction covers that charge?*

MR. HUSCHEN: Uh-huh.

THE COURT: Isn't it?

MR. HUSCHEN: Yes.

THE COURT: First part of it the answer is 'no.' He doesn't have to. Do you think he does?

MR. LIEKEN: No, but I don't think the second half is an accurate statement of the law either.

* * *

THE COURT: Well, we can give them further instructions. I'm not going to say that. Now, what I would propose to answer is that 'all of the instructions apply to all of the charges.'

MR. HUSCHEN: That's fine.

THE COURT: And 'the instructions you now have provide the answer to your question.' Any problem with that?

MR. LIEKEN: I have a problem in saying that the instructions you now have provide the answer to your question. *I have no problem with the first part of your statement.*

* * *

MR. LIEKEN: I am very concerned about that question, because the second half of the question gives me the impression that they might be considering convicting my client of mob action based upon just his knowledge, and I'm very concerned about that?

THE COURT: That's true. It doesn't really answer the question.

MR. LIEKEN: *I think it's safe and fair for you to indicate that all the instructions apply to all charges,* but I think that should be the end of it." (Emphasis added.)

The court answered the jury's question as follows:

"All of the instructions apply to all of the charges and the instructions you now have supply the answer to the first part of your question. We do not understand the second part of your question."

Defendant points out that the committee note for the IPI Criminal 3d issues instruction for mob action states in part:

"When accountability is an issue, ordinarily insert the phrase 'or one for whose conduct he is legally responsible' after the word 'defendant' in each proposition. See Instruction 5.03." (IPI Criminal 3d No. 19.02, Committee Note, at 72.)

The court's response indicating that the instructions were sufficient to answer the first part of the jury's question was, accordingly, inaccurate but that was the response the defense counsel requested be given. Defendant maintains that under *People v. Childs* (1994), 159 Ill. 2d 217, 636 N.E.2d 534, and *People v. Morris* (1980), 81 Ill. App. 3d 288, 401 N.E.2d 284, the court's answer to the jury question constituted plain error which was reversible.

■ Defendant also correctly points out that under a recent supreme court decision, the responsibility of the court upon receiving a question from the jury is as follows:

"A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily un-

derstandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. [Citation.] However, jurors are entitled to have their inquiries answered. Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. [Citation.] This is true even though the jury was properly instructed originally. ***

\* \* \*

*** [W]hether the instructions were proper and/or agreed to by defense counsel is not the determinative inquiry. The issue is whether the instructions were clearly understandable to the jury." *Childs*, 159 Ill. 2d at 228-31, 636 N.E.2d at 539-40.

■ In *Childs*, the trial court, upon receipt of a question from the jury, responded by telling the jury that the jury had been instructed as to the law and that deliberations should continue without consulting counsel. Here, counsel was consulted and defense counsel requested the response that the instructions were adequate. In *Morris*, a refusal of the trial court to answer a jury question concerning accountability, upon which the jury had not been instructed, was held to be reversible error although defense counsel did not object to the response made by the court. There the prejudice to the defense, because of the uncertainty, was highly prejudicial because the jury could easily have become confused between the elements of accountability and the *Housby* inference arising from exclusive possession of recently stolen property. (See *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151; IPI Criminal 3d No. 13.21.) Here, no confusion existed as to the significance of evidence. The only confusion the jury question to the court indicated was uncertainty as to whether defendant could be found guilty of mob action by accountability as well as by being a principal. That confusion would benefit rather than prejudice the defendant.

Because of the substantial difference between this case and *Childs* and *Morris*, we find that neither plain error nor reversible error resulted from the circuit court's refusal to answer the jury's question by clarifying the application of accountability in regard to the charged offense of mob action.

■ Wood's written statement which was inconsistent with his trial testimony was admitted into evidence pursuant to section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) which, in pertinent part, states:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

\*\*\*

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness." 725 ILCS 5/115—10.1 (West 1992).

■ Here, Wood's statement was (1) inconsistent with the testimony he gave at trial just prior to the statement's admission into evidence, (2) a narrative of the event he described, and (3) was signed by him. As Wood testified, he was subject to cross-examination and was thoroughly cross-examined. The dispute concerns whether a sufficient foundation was laid that the event described was one "of which he had personal knowledge." At trial, Wood indicated he was basing much of his statement upon what he had been told. Defendant maintains this negated the foundation request that the prior statement be from firsthand knowledge. The circuit court disagreed with this theory and ruled that the determination of whether the statement was from firsthand information must be determined from the face of the statement and not from the later testimony of the recanting witness. We agree. Here Wood's statement indicated he was speaking from information he gained from his vantage point in defendant's automobile. That was sufficient to supply the firsthand information aspect of the foundation for admission of the statement.

As this court stated in *People v. Coleman* (1989), 187 Ill. App. 3d 541, 547-48, 543 N.E.2d 555, 559-60, section 115—10.1 of the Code was authored by our colleague and panelist, Justice Steigmann. As explained in an article written by him which is cited in various decisions and in Cleary and Graham's Handbook of Illinois Evidence (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.9, at 666 (6th ed. 1994)), the policy reasons underlying section 115—10.1 of the Code as an exception to the hearsay rule include the fact that "substantive admissibility [of the hearsay] will protect parties from turncoat witnesses." (Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984).) Thus, a substantive policy reason for section 115—10.1 of the Code was to prevent a turncoat witness from backing away from a former

statement made under circumstances indicating it was likely to be true by merely denying the statement.

If the policy of the legislation expressed in section 115—10.1 of the Code is to make prior statements of a turncoat witness admissible, although the truth of the statement is denied by the witness, logic requires that such a statement appearing on its face to be from firsthand knowledge should not be rendered inadmissible merely because the witness testifies at trial that he or she was merely speaking about what he or she had heard. No case directly on point has been called to our attention, but in cases where prior inconsistent statements have been declared to be inadmissible because the declarant witness was not speaking from personal knowledge, the lack of knowledge appeared in the prior statement. See *People v. Saunders* (1991), 220 Ill. App. 3d 647, 580 N.E.2d 1246; *People v. Cooper* (1989), 188 Ill. App. 3d 971, 544 N.E.2d 1273; *People v. Coleman* (1989), 187 Ill. App. 3d 541, 543 N.E.2d 555.

The prior inconsistent statement made by Wood was properly submitted to the jury. We note that defendant did not raise the issue of the admission of the statement in evidence in his post-trial motion. Accordingly, the issue was waived unless plain error occurred. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1130.) As we find no error, we need not consider the waiver question.

We affirm the judgment of the circuit court.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.