30 June 2000

NO. 4-99-0219

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee,          ) Circuit Court of

v. ) Adams County

STEVEN R. SPEED, ) No. 98CF276

Defendant-Appellant. ) 

) Honorable

          )    John C. Wooleyhan,

                               )    Judge Presiding.

_________________________________________________________________

JUSTICE GARMAN delivered the opinion of the court:

An Adams County jury convicted defendant Steven R. Speed of one count of domestic battery.  720 ILCS 5/12-3.2(a)(1) (West 1996).  He appeals, arguing that (1) the trial court erred in admitting into evidence the hearsay statement of the victim, D.M., where she had no recollection of the details contained in the statement; and (2) he is entitled to a $5-per-day credit against his fines for each day he spent in custody for the domestic violence offense.  We affirm and remand. 

Defendant was accused of causing bodily harm to D.M. by punching her in the head with his fist.  At the jury trial, held on February 1, 1999, D.M. testified that on June 21, 1998, she lived at the Quincy Hotel.  She and defendant had an "off and on" relationship.  They had broken up prior to June 21, 1998.  D.M. stated that she thinks defendant was at her apartment on that date.  However, because she was intoxicated at the time, she recalls nothing about that day, except what others have told her.  D.M. testified that she gave a statement to the police.  She admitted writing the statement but did not recall doing so.  After the prosecutor showed D.M. her written statement, she verified that the statement was in her handwriting, with her signature at the bottom, and that this was the statement she gave to police on June 21, 1998.  When D.M. began to read directly from the statement, defense counsel objected.  The prosecutor explained that, if D.M. was unable to refresh her memory by looking at the statement, she was entitled to read it as her past recollection recorded.  The trial court overruled the objection and D.M. read the statement to the jury.  

In the statement, D.M. said that she and defendant had a relationship and that he moved out of her apartment six or seven months prior to June 21, 1998.  Sometime during the two weeks prior to that date, some of D.M.'s jewelry had been taken.  She went with a friend to defendant's house on the night of June 20, 1998, and confronted him.  Defendant said he had taken the jewelry and sold it to a man in Missouri and that he would return it to D.M. at 3 the next afternoon.  She agreed.  Defendant appeared the next day at her apartment and said that he did not think he could get the jewelry back, because he had sold it.  D.M. said she would call the police.  Defendant called her some profane names and poured a beer over her head.  He then struck her in the left side of her face and shoved her backward over the corner of the bed.  D.M. fell to the floor.  Defendant ran out of the room, down six flights of stairs, and out the front door of the hotel to his vehicle.  

The prosecutor showed D.M. a photograph that she testified depicted the left side of her face, which was swollen.  

On cross-examination, D.M. testified that she had been drinking for a couple of months prior to June 21, 1998.  She did not recall meeting defendant that day, making the statement to police, or having her face photographed.  

Rosemary Houstead testified that she was working at the hotel on June 21, 1998.  She is familiar with both defendant and D.M., as they had lived together at the hotel at one time.  On the date in question, D.M. lived at the hotel; Houstead was not certain whether defendant still lived there.  On that day, Houstead saw defendant rapidly run down the front steps, out the door, and down the ramp.  A minute or so later, D.M. came running down the same steps.  She approached Houstead's desk in the hotel lobby.  She was crying, shaking, and holding her face.  

On cross-examination, Houstead testified that she saw defendant enter the building approximately 30 or 40 minutes prior to the time he ran out of the hotel.  D.M. used the hotel's house telephone to call the police.  

Quincy police officer Troy Ruppert testified that he responded to D.M.'s call from the hotel.  When he arrived at the hotel around 3:17 p.m., he went upstairs and spoke to D.M.  Inside the apartment, Ruppert found a beer can and wet spots on the carpet.  He detected a strong odor of beer in the apartment.  D.M. was upset, her hair was in disarray, her face was red, and the left side of it was swollen.  Ruppert could tell that D.M. had been crying, as her eyes were red.  She seemed somewhat afraid.  Ruppert testified that, at approximately 3:30 p.m., he and D.M. went to the police station.  He identified D.M.'s written statement as the one she gave him that day.  Ruppert also identified a photograph he took of the left side of D.M.'s face.  

Ruppert testified that he did not believe D.M. was intoxicated that day.  He allowed D.M. to drive to the police station, and he followed her there.  At the time Ruppert spoke to D.M., she had no difficulty recalling what happened or writing her statement.  Ruppert believed she was "perfectly fine"; had he believed otherwise, he would not have allowed her to drive to the police station.  

Defendant testified that on June 21, 1998, he went to D.M.'s apartment to pick up his clothes.  They talked for a while in a friendly manner.  Defendant asked for and received a beer.  D.M. is an alcoholic and was intoxicated.  Suddenly, she threatened defendant with calling the police.  When she gets intoxicated, she threatens him with the police and has blackouts.  Defendant became angry.  He splashed beer on her and left the apartment.  Defendant denied striking D.M.  D.M. was angry because defendant had a new girlfriend.  He and D.M. are back together now.  

On cross-examination, defendant admitted that D.M. accused him of taking her jewelry and this was the reason she was angry and threatened to call police.  Defendant denied taking the jewelry and insisted that the theft accusation did not anger him.  He ran because he had committed a battery by splashing beer on D.M.   Following jury instructions and closing arguments, the jury retired to deliberate.  Less than 45 minutes later, it returned a verdict of guilty, on which the trial court entered judgment.  

On March 16, 1999, the trial court sentenced defendant to 364 days in jail, ordered him to pay a $1,000 fine, and granted him 56 days' sentence credit for time served.  

On appeal, defendant first argues that the trial court erred in admitting D.M.'s written hearsay statement into evidence.  We note that the determination of the admissibility of evidence lies within the sound discretion of the trial court and that court's decision will not be disturbed absent an abuse of discre

tion.  
People v. Edwards
, 309 Ill. App. 3d 447, 452, 722 N.E.2d 258, 261 (1999).  

Defendant contends that the statement was admitted into evidence without either the prosecutor or the trial court specify

ing the grounds of admissibility.  Thus, he complains that he is left to guess as to the grounds upon which the statement was admitted.  This contention, however, is inaccurate.  When defense counsel objected to D.M. reading the statement to the jury, the prosecutor argued that the statement constituted D.M.'s past recollection recorded, and the trial court agreed. 

The trial court here admitted the statement on the basis of the past recollection recorded exception to the hearsay rule.  A written statement or report may be admitted into evidence as the witness' past recollection recorded only if four prerequisites are met:  (1) the witness had firsthand knowledge of the recorded event; (2) the written statement was made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness lacks present recollection of the event; and (4) the witness can vouch for the accuracy of the written state

ment.  
Salcik v. Tassone
, 236 Ill. App. 3d 548, 554, 603 N.E.2d 793, 797 (1992).  

The State argues that defendant has forfeited this issue on appeal for failure to file a posttrial motion.  Failure to include the issue in a posttrial motion results in forfeiture of the issue on appeal.  
People v. Hood
, 244 Ill. App. 3d 728, 737, 614 N.E.2d 335, 341 (1993).  However, review of a forfeited issue is available under the plain error doctrine, provided certain requirements are met.  The evidence must be closely balanced or the alleged error must be so serious that it deprived defendant of a fair trial.  
People v. Cloutier
, 178 Ill. 2d 141, 164, 687 N.E.2d 930, 940 (1997).  

Defendant urges us to address this issue on the basis of plain error, arguing that, without D.M.'s written statement, the evidence was insufficient to prove him guilty of the offense beyond a reasonable doubt.  Because of the importance of D.M.'s statement to the State's case, we will address defendant's argument, despite forfeiture.

D.M.'s statement was not properly admitted into evidence as her past recollection recorded.  D.M. did not vouch for the accuracy of her written statement as of the time she made it.  The first three requirements for admissibility as past recollection recorded were fulfilled:  (1) D.M. had firsthand knowledge of the events recorded in the statement; (2) the statement failed to refresh her recollection; and (3) the statement was written very shortly after the incident occurred.  However, D.M. did not testify that the statement was accurate when written.  

The State notes that, because D.M. testified that she did not recall the events described in her statement, she could not vouch for the accuracy of the statement.  The State points out that the observations of Houstead and Ruppert support the accuracy of the statement.  However, Houstead testified that she saw defendant enter the hotel and leave rapidly a short time later.  A few moments after observing defendant, Houstead observed D.M. come down the stairs crying and holding her face.  She saw D.M. telephone the police.  Ruppert testified as to the condition of D.M. and her apartment.  He testified that D.M. wrote her statement at the police station and he photographed the left side of her face.  Since he had no firsthand knowledge of what took place in D.M.'s apartment, he was not in a position to verify the accuracy of the statement.  Likewise, Houstead did not see any of the events D.M. described in her statement.  

We conclude, however, that D.M.'s written statement was properly admitted into evidence as a prior inconsistent statement.   Section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 1998)) governs admissibility of prior inconsistent statements.  That section permits an exception to the hearsay rule if (1) the statement is inconsistent with the witness' testimony at trial; and (2) the witness is subject to cross-

examination concerning the statement, and the statement (a) was made under oath at a trial, hearing, or other proceeding, or (b) narrates, describes, or explains an event of which the witness had personal knowledge, and (i) the statement is proved to have been written or signed by the witness, or (ii) the witness acknowledged under oath the making of the statement either in her testimony at the hearing or trial at which admission of the statement is sought, or at a trial, hearing, or other proceeding, or (iii) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.  725 ILCS 5/115-10.1 (West 1998).  

Defense counsel cross-examined D.M. as to her statement and lack of recollection thereof.  The statement describes an event of which D.M. had personal knowledge at the time she made the statement.  The question of personal knowledge is to be determined from the face of the statement and not from the witness' subsequent testimony.  
People v. Fauber
, 266 Ill. App. 3d 381, 390, 640 N.E.2d 689, 695 (1994).  Here, defendant makes no claim that D.M. based her statement on hearsay.  The State established that D.M. wrote the statement and signed it.  In fact, D.M. acknowledged these facts in her testimony.  The only question remaining is whether D.M.'s testimony was inconsistent with her prior written statement.  Defendant argues that D.M.'s testimony was not inconsistent with her statement, because she did not testify to any details that differed from those contained in her statement; rather, she testified that she had no memory of the event or of writing the statement.  

In 
People v. Flores
, 128 Ill. 2d 66, 538 N.E.2d 481 (1989), defendant was convicted of armed robbery and murder.  A witness, Ramos, who testified against defendant had previously testified before the grand jury.  At trial, Ramos testified that he could not recall having a conversation with defendant concerning the death of the victim.  He recalled testifying before the grand jury, but stated that he could not recall the substance of his testimony.  When shown a transcript of his grand jury testimony, Ramos acknowledged that it contained an accurate description of his testimony.  In further questioning, Ramos acknowledged that he testified before the grand jury that defendant told him that defendant had shot the victim.  
Flores
, 128 Ill. 2d at 78-79, 538 N.E.2d at 484-85
.  The grand jury testimony was admitted into evidence as a prior inconsistent statement.  Defendant was sentenced to death.  
Flores
, 128 Ill. 2d at 79-80, 538 N.E.2d at 484-85.  On appeal to the Supreme Court of Illinois, defendant argued that Ramos' testimony at trial was not inconsistent with his grand jury testimony, because he simply stated he could not recall the substance of his grand jury testimony.  The court rejected this argument, stating that a witness' prior testimony does not have to directly contradict testimony given at trial to be considered "inconsistent" within the meaning of that term in section 115-10.1 of the Code.  "'[W]here a witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted [into evidence] ***.'"  
Flores
, 128 Ill. 2d at 87, 538 N.E.2d at 488, quoting 3A J. Wigmore, Evidence §1018, at 1061 (Chadbourn rev. ed. 1970).  The determination of whether a witness' prior testimony is inconsistent with her present testimony is left to the discre

tion of the trial court.  
Flores
, 128 Ill. 2d at 87-88, 538 N.E.2d at 489.

One of the policies underlying section 115-10.1 of the Code is to protect parties from "turncoat" witnesses who back away from a former statement made under circumstances indicating that it was likely to be true.  
Fauber
, 266 Ill. App. 3d at 390-91, 640 N.E.2d at 695.  It is just as damaging to a party when such a witness professes a lack of memory of the event or of making the statement.  We note here that D.M.'s testimony about being so intoxicated that she could not recall what happened between her and defendant was impeached by Ruppert's testimony that he did not believe that D.M. was intoxicated, she had no difficulty telling him what happened or writing her statement, and he allowed her to drive herself to the police station.  We discern no difference between a witness like D.M. and one who directly contradicts a prior statement.  We conclude that the trial court did not err in admitting D.M.'s written statement into evidence.  We note that we may affirm the trial court's judgment on any basis supported by the record.  
Cessna v. City of Danville
, 296 Ill. App. 3d 156, 165, 693 N.E.2d 1264, 1270 (1998).

Defendant's last argument is that he is entitled to a $5-

per-diem
 credit against his fine for each day he spent in custody for the offense of which he was convicted.  The trial court found that defendant was incarcerated for 56 days.  Defendant, however, believes he is entitled to one additional day of credit.  He points out that the trial court failed to award credit for one day on which he was incarcerated on an outstanding warrant for failure to appear at a scheduled hearing.  Since defendant's fine was paid out of his bond money, he requests a refund of $285.  

The State concedes that defendant should be credited for one additional day of incarceration.  However, the State takes issue with defendant's request for a refund of the credit, noting that the record does not show that the fine and court costs were paid.  We have reviewed the record and agree with the State that this matter must be remanded to the trial court to allow it to determine the issues of payment and refund.   The State also argues that if any refund is due, the trial court should first apply the refund to appointed counsel fees.  However, any hearing on appointed counsel fees must be held within 90 days after entry of a final order disposing of the case at the trial court level.  725 ILCS 5/113-3.1(a) (West 1998).  Here, no hearing was held within that time frame; therefore, no counsel fees may now be assessed against defendant.

Accordingly, we affirm defendant's conviction and sentence.  We remand the case to the trial court to award defendant one additional day of credit and to determine whether defendant's fine and court costs have been paid.  If so, the court should determine whether defendant should receive a refund of any of his bond money.

Affirmed and remanded with directions.

McCULLOUGH and MYERSCOUGH, JJ., concur.