NOTICE

Decision filed 04/25/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220486-U

NO. 5-22-0486

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 15-CF-1593 |
| | ) | |
| KYJUAN K. DORSEY, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice McHaney and Justice Cates concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err in granting the State's motion to dismiss the defendant's postconviction petition. The record does not rebut the presumption of reasonable assistance created by postconviction counsel's filing of a certificate of compliance with Illinois Supreme Court Rule 651(c). Counsel was not obligated to pursue the defendant's speedy trial claim where she had determined that it lacked merit.  Defendant's sentencing hearing complied with *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. Additionally, defendant did not establish that he was prejudiced by counsel's failure to attach his signed affidavit in support of his postconviction petition.

¶ 2     Defendant Kyjuan Dorsey was found guilty of aggravated discharge of a firearm, aggravated battery with a firearm, and first degree felony murder. He was sentenced to a total of 80 years in the Illinois Department of Corrections (IDOC). Dorsey now appeals from the second-stage dismissal of his postconviction petition, arguing that postconviction counsel provided

1

unreasonable assistance by failing to shape his speedy trial and sentencing claims into proper legal form and attach evidentiary support for his allegations. For the following reasons, we affirm.

¶ 3                                      BACKGROUND

¶ 4                               A. Charges and Pretrial

¶ 5     The underlying incident involves a drive-by shooting that occurred on October 19, 2015. According to the trial testimony of Demetrius Lane, he picked up Dorsey and Jeremy O'Neal in his car on the day of the incident. O'Neal was in the passenger seat, and Dorsey sat behind him. At some point during the drive, a shooting occurred. On October 29, 2015, the State charged Dorsey with (1) aggravated discharge of a firearm in the direction of Marquise Burnett; (2) aggravated battery with a firearm, causing bodily harm to Burnett; and (3) first degree felony murder predicated on aggravated discharge of a firearm, thereby causing the death of O'Neal.

¶ 6     On November 30, 2015, defense counsel filed a motion to continue pretrial to January 5, 2016, which the court granted. Defense counsel answered ready for trial on January 5, 2016, and continued to answer ready for trial until jury selection began on June 27, 2016. Over defense counsel's objections, the State sought and was granted continuances on January 5, February 2, March 1, and April 12, 2016, because it was waiting for DNA testing results. The State argued that the evidence was material to the case, that it had exercised due diligence to obtain the DNA analysis, and that there were reasonable grounds to believe that the analysis could be obtained. See 725 ILCS 5/103-5(c) (West 2022). On May 3, 2016, the State filed a motion requesting that the matter be set for trial on June 27, 2016, stating that the lab report had indicated the presence of two individuals who were not known to the investigation, and the State required more time to look into these individuals. The circuit court granted the motion over defense counsel's objection, and set the matter for trial.

¶ 7      After the jurors were sworn in, the State sought a one-day continuance on June 28, 2016, because one of its witnesses, Demetrius Lane, had been shot that morning and was in surgery. The prosecutor indicated that the shooting might be related to Lane's proposed testimony in the case. The court granted the continuance over defense counsel's objection. On June 29, 2016, the State requested another continuance, based on Lane's unavailability. The State acknowledged that, as of June 27, 2016, Dorsey had been in custody for 205 days not attributable to him. Over defense counsel's objections, the court declared a mistrial and set a new trial date of July 25, 2016. The court noted that it was attributing one week of that time to the defense, due to defense counsel's unavailability between July 18, 2016, and July 24, 2016.

¶ 8      On July 21, 2016, the State filed a motion to continue based on the unavailability of two witnesses. The State argued that Dorsey's statutory right to a speedy trial was not implicated because the court had granted a mistrial, and that a mistrial does not necessarily start a new statutory period or continue the old period. The court granted the continuance over the defense's objection. The court found that, while Dorsey was incarcerated, the requested continuance was not unreasonable and the defendant did not allege, much less demonstrate, any prejudice based on the State's motion. The trial was continued to August 15, 2016.

¶ 9      On August 12, 2016, defense counsel filed a motion to dismiss the charges against Dorsey because his right to a speedy trial had been violated. The court denied the motion, and the matter proceeded to trial on August 15.

¶ 10                          B. Trial and Sentencing

¶ 11     The jury found Dorsey guilty on all counts. At the sentencing hearing, the State presented testimony from witnesses in aggravation. According to Dorsey's presentence investigation report, he had two prior juvenile delinquency adjudications for theft and a delinquency adjudication for

3

burglary. A month before the shooting, he completed his parole period on the burglary adjudication. Defense counsel argued that Dorsey, who was 19 at the time of the offense, was a "20-year-old young man who's essentially been raised by wolves." Dorsey had grown up in foster care and been "in and out of the system." He had never had a stable home or a positive male role model. Counsel further argued that Dorsey's upbringing understandably led him to develop behavioral problems. Counsel asked the court to look at Dorsey's life history to understand "how he became this man that he is today." Counsel concluded that Dorsey "didn't have a chance," given his young age, his upbringing, and his difficult childhood.

¶ 12     Following the hearing, the circuit court sentenced Dorsey to a total of 80 years in IDOC, comprised of 55 years for murder and 25 years for aggravated battery with a firearm, to be served consecutively. The court specifically referenced Dorsey's age and his life circumstances in stating:

> "The defendant's only twenty years of age; a very young man. Although he has a history of juvenile delinquency cases, therefore property crimes; theft, theft and burglary. He hasn't gotten his education. He's never been employed. And as [defense counsel] has indicated, he was literally raised by the State and the State does a rotten job raising children."

The court further commented on the statutory aggravating factor of deterrence, asking:

> "[H]ow many times does this Court have to sentence young men over and over again for the rest of their lives in prison? This is an absolute tragedy. It's a tragedy for the family, their loss, their son, their loved one. It's a tragedy for Mr. Dorsey. It's a tragedy for Mr. Dorsey when, again, he was raised by the State. And if you look at circumstances, one could predict that Mr. Dorsey was probably not going to end up as a successful individual. How many times do we have to sentence young men for the rest of their lives? And that's what's going to be happening to Mr. Dorsey."

¶ 13     The court denied Dorsey's motion to reconsider the sentence, stating that it had considered the circumstances surrounding the offense, Dorsey's juvenile adjudication history, and his age.

4

¶ 14                      C. Direct Appeal and Postconviction Proceedings

¶ 15     On direct appeal, Dorsey argued that (1) the State failed to prove him guilty beyond a

reasonable doubt and (2) his 80-year sentence was unconstitutional under the proportionate

penalties clause of the Illinois Constitution as he was 19 years old at the time. *People v. Dorsey*,

2019 IL App (4th) 160781-U, ¶¶ 4, 76. The Fourth District affirmed his conviction and sentence.

*Id.* ¶ 89. The court also found that the record was insufficient to determine whether *Miller v.*

*Alabama*, 567 U.S. 460 (2012), applied to Dorsey and that a collateral proceeding was better suited

for his claim:

> "Like in *Miller*, here, an evidentiary hearing to determine how *Miller* applied to
> defendant did not take place. Thus, we follow the supreme court and find that the record is
> insufficient to determine whether *Miller* applied to defendant. We further find defendant's
> claim better suited for resolution in a collateral proceeding and decline to remand this
> matter for an evidentiary hearing." *Id.* ¶ 87.

¶ 16     Dorsey filed a *pro se* postconviction petition on January 15, 2020, raising six claims:

(1) that trial and appellate counsel were ineffective by failing to investigate an alibi witness and

other suspects with DNA profiles; (2) that trial counsel was ineffective for not objecting to the

State's motion for a continuance that allegedly violated Dorsey's right to a speedy trial; (3) that a

conflict of interest existed based on trial counsel's personal relationship with the state's attorney;

(4) that there was insufficient evidence to support his conviction; (5) that the State introduced

known perjured testimony because Lane changed his story, resulting in plain error; and (6) that his

*de facto* life sentence of 80 years violated the Illinois proportionate penalties clause, citing to

*Miller* and cases in which defendants under 21 years of age had sentences vacated, and arguing

that current brain science shows brains do not fully develop until age 25.

¶ 17     The circuit clerk did not forward Dorsey's petition to the court until October 16, 2020. On

that date, the court advanced the petition to the second stage and appointed counsel for Dorsey,

stating that "[b]ut for the Circuit Clerk's incompetence, this matter may well have been decided in the first stage of the proceedings." On September 27, 2021, appointed counsel informed the court that she had spoken with Dorsey once on July 23, 2021, but had not had the chance to speak with him again because her arranged calls had been canceled due to COVID and security lockdowns. The circuit court granted counsel a few weeks to speak to him. On October 12, 2021, counsel told the court that she had spoken to Dorsey at the end of September and needed three weeks to file an amended petition, as she needed to get a signed document back from him.

¶ 18     On November 2, 2021, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) and an amended postconviction petition that alleged five claims: (1) that trial counsel was ineffective for failing to investigate and call Dorsey's mother as an alibi witness; (2) that trial counsel was ineffective for failing to investigate two other possible suspects, Xavier Singleton and Michael Nichols; (3) that the trial court erred by not granting Dorsey's speedy trial motion; (4) that appellate counsel was ineffective for not raising on direct appeal trial counsel's failure to investigate the alibi witness and the other suspects; and (5) that the Illinois Truth-in-Sentencing Act (730 ILCS 5/3-6-3(a)(2) (West 2014)) was unconstitutional as applied to Dorsey because he was 19 years old at the time of the offense.

¶ 19     The amended petition mentioned three other claims that counsel investigated, but determined were without merit: (1) that trial counsel was ineffective for failing to object to the State's motion for a continuance, (2) that trial counsel was ineffective for not objecting to his conflict of interest with the state's attorney, and (3) that there was insufficient evidence to convict because of the use of unreliable evidence. Counsel also attached trial counsel's motion to dismiss on the basis of a speedy trial violation, and an unsigned affidavit from Dorsey. Counsel told the

6

court that she did not have enough time to obtain his signature, so she attached the unsigned affidavit and planned to update the record with a signed version later.

¶ 20　The State filed a motion to dismiss all claims on June 16, 2022. Postconviction counsel did not file a response, and no hearing was held on the State's motion. On July 20, 2022, the circuit court issued an order dismissing all of Dorsey's claims. In its order, the court noted its concerns about postconviction counsel's work product, because the Rule 651(c) certificate contained the wrong name for the defendant, the amended petition included three separate claims labeled "Claim III," and counsel did not attach Dorsey's signed affidavit despite having seven months to do so. Nevertheless, the court found that postconviction counsel provided reasonable assistance in raising five claims and addressing why she rejected three others.

¶ 21　In finding that the amended petition failed to make a showing that Dorsey was entitled to relief, the court commented on the unsigned affidavit. It stated that postconviction counsel attached a proposed affidavit from Dorsey that was clearly drafted by counsel, and contained only self-serving statements without factual support from the trial record or other affidavits. The court further noted that there were no other affidavits, and that the record did not support Dorsey's claims. Dorsey now appeals from the dismissal of his amended petition.

¶ 22　　　　　　　　　　　　　　　ANALYSIS

¶ 23　On appeal, Dorsey argues that postconviction counsel failed to provide reasonable assistance by failing to shape his speedy trial and sentencing claims into proper legal form. He also claims that counsel did not attach evidentiary support for his allegations to the amended petition.

¶ 24　　　　　　　　　　　A. Post-Conviction Hearing Act

¶ 25　The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a statutory remedy to criminal defendants who claim that substantial violations of their

7

constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction petition is a collateral attack on the judgment, the purpose of which is to " 'allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal.' " *People v. Clark*, 2023 IL 127273, ¶ 38 (quoting *People v. Barrow*, 195 Ill. 2d 506, 519 (2001)). Therefore, "issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *Taliani*, 2021 IL 125891, ¶ 53 (citing *People v. Holman*, 2017 IL 120655, ¶ 25).

¶ 26    The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. Our supreme court has discussed the first two stages, relevant here, as follows:

> "At the first stage, the circuit court determines whether the petition is 'frivolous or is patently without merit.' 725 ILCS 5/122-2.1(a)(2) (West 2010). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. [Citation.]
>
> During second-stage proceedings, the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 122-5 (West 2010). If the court appoints counsel at the second stage, appointed counsel is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c), namely, stating that appointed counsel has consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); [citation].
>
> At the conclusion of the second stage, the court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If not, the petition may be dismissed. [Citation.] If the requisite showing is made, however, the petition advances to the third stage, and an evidentiary hearing is held." *Cotto*, 2016 IL 119006, ¶¶ 26-28.

¶ 27    In addition to the court finding that the petition is not frivolous or meritless, a postconviction petition can be advanced to the second stage if the court fails to take any action within 90 days of its filing. As our supreme court has explained,

8

"It is only after a defendant's petition has been found to set forth the gist of a meritorious claim, *or* the court fails to take any action on the petition within 90 days of filing, that the process advances to second-stage proceedings and counsel is appointed. [Citation.] Of course, in the latter instance, the petition may well be frivolous or patently without merit, and the defendant is appointed counsel only through the fortuity of the circuit court's inaction." (Emphasis in original.) *People v. Greer*, 212 Ill. 2d 192, 204 (2004).

In the present matter, Dorsey's postconviction petition proceeded to the second stage not because the court found that the petition set forth the gist of a meritorious claim, but because there was no ruling made within 90 days of filing. The circuit court then granted the State's motion to dismiss the petition.

¶ 28    The second stage of proceedings tests the legal sufficiency of the petition, leaving evidentiary questions to be resolved in the third stage. *People v. Domagala*, 2013 IL 113688, ¶ 35. At the dismissal stage, "all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The court does not engage in fact-finding or credibility determinations at this point. *Id.* A motion to dismiss "raises the sole issue of whether the petition being attacked is proper as a matter of law." *Id.*

¶ 29    The dismissal of a postconviction petition "is warranted only when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Id.* at 382. A second-stage dismissal of a defendant's petition presents a legal question, which we review *de novo. People v. Whitfield*, 217 Ill. 2d 177, 182 (2005).

¶ 30                B. Reasonable Assistance and Rule 651(c) Certificate

¶ 31    Because the right to counsel in postconviction proceedings is solely derived from statute, petitioners are entitled only to the level of assistance provided by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999); see also 725 ILCS 5/122-4 (West 2018). As there is no constitutional right to the effective assistance of postconviction counsel, "the reasonable level of assistance provided

9

for by the Act is 'less than that afforded by the federal or state constitutions.' " *Cotto*, 2016 IL 119006, ¶ 45 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 32    Rule 651(c) requires that postconviction counsel certify, or the record affirmatively show, that counsel (1) consulted with the petitioner to ascertain his contentions of deprivation of constitutional rights, (2) examined the trial record, and (3) amended the postconviction petition, if necessary, to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Pendleton*, 223 Ill. 2d at 472. Regarding the third obligation, counsel is not required to advance frivolous or spurious claims on the petitioner's behalf. *Pendleton*, 223 Ill. 2d at 472 (citing *Greer*, 212 Ill. 2d at 205).

¶ 33    A Rule 651(c) certificate creates a presumption that postconviction counsel provided a reasonable level of assistance. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. Where postconviction counsel has filed a Rule 651(c) certificate, a defendant claiming unreasonable assistance "must show not only how the attorney's performance was deficient or unreasonable but also what prejudice resulted from that deficiency." *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58. Even where the claims in a *pro se* petition are not frivolous or patently meritless, postconviction counsel may nevertheless determine it has an uncurable defect and decline to amend it without providing unreasonable assistance. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 19. Whether postconviction counsel provided reasonable assistance pursuant to Rule 651(c) is reviewed *de novo. Jones*, 2011 IL App (1st) 092529, ¶ 43.

¶ 34    As the State notes on appeal, Dorsey's petition was advanced to the second stage without the court making a first-stage finding that the petition sets forth the gist of a meritorious claim, and Dorsey does not argue that his petition presents the required substantial showing of a constitutional violation. Dorsey's appointed counsel filed an amended postconviction petition and attached a

10

Rule 651(c) certificate. The certificate stated that counsel had consulted with Dorsey via phone, mail, electronic means, or in person to ascertain his assertions of deprivation of constitutional rights, had examined the court file and the report of proceedings of the trial, and had made any amendments to the *pro se* petition necessary to adequately present Dorsey's claims.[1]

¶ 35    The State cites to the unpublished decision in *People v. Gordon* as persuasive authority for the position that postconviction counsel's failure to amend a petition is not proof of unreasonable assistance without a showing that the petition could have been successfully amended, and that this is especially true where the petition was advanced to the second stage because the circuit court failed to make a timely first-stage determination, rather than deciding that the petition set forth a nonfrivolous claim or claims. 2023 IL App (1st) 211608-U, ¶ 34 (distinguishing *People v. Addison*, 2023 IL 127119, ¶ 26, in which the court found that counsel provided unreasonable assistance where the petition was advanced on its merits and counsel failed to properly shape *pro se* claims).

¶ 36    Dorsey notes that over a year had passed from the time that the circuit court appointed postconviction counsel to counsel's filing of a Rule 651(c) certificate and amended petition. He argues that, in that time, counsel failed to advance his claims in the following ways: (1) by not fully reviewing the appellate record because the transcript of the hearing on Dorsey's motion to dismiss was missing; (2) by not shaping his two strongest *pro se* claims—the statutory speedy trial right violation and proportionate penalties argument—into proper legal form; (3) by not attaching evidence in support of the claims; and (4) by not requesting a hearing on the State's motion to

---

[1] As previously stated, the certificate identifies Dorsey as the represented defendant, but later misstates that counsel is representing a different individual. However, postconviction counsel's clerical error does not defeat the presumption that she substantially complied with Rule 651(c). See *People v. Collins*, 2021 IL App (1st) 170597, ¶¶ 33-34 (postconviction counsel's misstatement in the Rule 651(c) certificate that counsel examined the "Report of Proceedings," and not the record as a whole, did not overcome the presumption that counsel substantially complied with Rule 651(c)).

dismiss the petition. Therefore, he concludes, counsel violated Rule 651(c) by providing unreasonable assistance.

¶ 37    He cites to *People v. Suarez* for the position that remand is required when counsel fails to make any necessary amendments to the petition, shape the petitioner's allegations into proper legal form, or attach any necessary affidavits or explain their absence—"regardless of whether the claims raised in the petition had merit." 224 Ill. 2d 37, 47 (2007). We find *Suarez* to be distinguishable. As the First District explained in *People v. Gallano*,

> "In *Suarez*, the supreme court found that postconviction counsel failed to comply with Rule 651(c) where he did not file a Rule 651(c) certificate and the record did not show that he consulted with defendant as required by the rule. [Citation.] In this context, *Suarez* held that remand is required where counsel failed to fulfill the Rule 651(c) duties 'regardless of whether the claims raised in the petition had merit' and that noncompliance with the rule cannot be excused on the basis of harmless error." 2019 IL App (1st) 160570, ¶ 29.

The court went on to distinguish the situation in *Suarez* from one in which postconviction counsel did file a Rule 651(c) certificate, "thus creating a rebuttable presumption that she complied with the requirements of the rule." *Id.* ¶ 30; see also *Landa*, 2020 IL App (1st) 170851, ¶ 58 (agreeing with *Gallano* that the *Suarez* statement at issue applies when counsel fails to file a certificate). Where, as here, a defendant does not allege that counsel either did not file a certificate or failed to perform any of the three specific Rule 651(c) duties, but rather argues that counsel "performed those duties deficiently or otherwise failed to provide reasonable assistance," he must show prejudice in addition to how the performance was deficient. *Landa*, 2020 IL App (1st) 170851, ¶ 58.

¶ 38    As previously mentioned, postconviction counsel does not provide unreasonable assistance by failing to amend a *pro se* petition to pursue a frivolous or otherwise incurably defective claim. *Bass*, 2018 IL App (1st) 152650, ¶ 16 ("[N]ot every petition can be amended to state a substantial constitutional claim."). In *Bass*, the defendant argued that postconviction counsel failed to attach

the affidavits of witnesses named in his *pro se* petition, which he claimed were necessary to cure defects on the face of the petition. *Id.* Postconviction counsel informed the trial court that he had located and interviewed these witnesses, as well as one additional individual, but was not able to attach any affidavits to the petition. *Id.* ¶ 15. The court found that the record did not support the defendant's presumption that "counsel's failure to amend his petition was the result of some deficiency in his lawyer's performance rather than an inability to substantiate [the defendant's] claims." *Id.* ¶ 14.

¶ 39 Likewise, in the present case, we cannot assume that the two proposed claims at issue on appeal would have survived the State's motion to dismiss had postconviction counsel raised them in the amended petition. Nor can we assume that the outcome would have been any different had counsel obtained Dorsey's signature on the attached affidavit. This is particularly true given that the circuit court stated in its order dismissing the amended petition that the unsigned affidavit contained only self-serving statements lacking factual support, and the trial record did not support Dorsey's claims. We will review both of Dorsey's proposed claims in greater depth below, but we initially note that Dorsey must rebut the presumption of reasonable assistance created by counsel's filing of a Rule 651(c) certificate.

¶ 40 C. Postconviction Counsel's Decision Not to Bring a Speedy Trial Claim

¶ 41 Although the Code of Criminal Procedure of 1963 (Code) implements the constitutional speedy trial right in the relevant statutory provision prescribing time limitations, the constitutional and statutory rights to a speedy trial are not coextensive. See *People v. Wills*, 153 Ill. App. 3d 328, 335 (1987). The four factors to consider and balance on review are as follows: (1) the length of the delay, (2) the reasons for the delay, (3) the prejudice to defendant, and (4) whether defendant waived the right. *People v. Crane*, 195 Ill. 2d 42, 48 (2001). While there is no precise time limit

13

defining the right to a speedy trial, "the period between mistrial and retrial must be a reasonable one." *Wills*, 153 Ill. App. 3d at 335-36.

¶ 42    Postconviction counsel stated in the amended petition that she had reviewed Dorsey's claim that trial counsel was ineffective for failing to object to the State's motion to continue and believed it to be meritless. She explained that trial counsel objected to the State's multiple requests for continuances and filed a motion to dismiss based on the violation of Dorsey's statutory speedy trial right. Additionally, postconviction counsel attached trial counsel's motion to dismiss to the amended petition. In finding that postconviction counsel provided reasonable assistance, the circuit court noted that she had addressed the reasons why she was not raising this and two other claims proposed by Dorsey.

¶ 43    In his argument on appeal, Dorsey acknowledges that his *pro se* claim, that "trial counsel was ineffective for failing to object to the People's continuances and file a motion to dismiss on the basis that his speedy trial rights were violated," was rebutted by the record. He admits that postconviction counsel was correct in informing the court that trial counsel had objected to the State's continuances and filed a motion to dismiss. Nevertheless, he contends that postconviction counsel presented the issue in improper legal form as "merely a trial court error to deny the motion." Instead, he claims that counsel was required to frame it as ineffective assistance of direct appeal counsel, who caused Dorsey to forfeit the issue by failing to raise it on direct appeal. He therefore argues that this framing was the only way that this otherwise-forfeited claim of a speedy trial violation could be brought in an amended petition, and postconviction counsel performed unreasonably by failing to act on this. He adds that counsel did think to raise the issue of ineffective assistance of direct appeal counsel elsewhere in the amended petition, but did not do so on the speedy trial claim.

14

¶ 44    Dorsey does not attempt to show that his statutory speedy trial right was violated. Instead, he argues that counsel failed to fulfill one of her fundamental duties by allegedly failing to review the parties' arguments and the circuit court's reasoning in denying Dorsey's motion to dismiss for speedy trial violation. Dorsey refers to the fact that the transcript of the hearing on his motion was not initially part of the record on appeal. We disagree with Dorsey's contention that this implies that postconviction counsel failed to examine the trial record as required by Rule 651(c), and further find that Dorsey has not rebutted the presumption that counsel fulfilled her responsibilities under the rule.

¶ 45    A review of the procedural history shows that postconviction counsel had a proper basis for declining to raise a speedy trial violation in the amended petition because it lacked merit. The record further shows that Dorsey's proposed reframing of the issue would not have cured the defects in his claim. The facts rebut his argument that trial counsel erred in not preserving Dorsey's speedy trial right and that counsel on direct appeal provided ineffective assistance by not raising this issue. Therefore, postconviction counsel's assistance was not unreasonable because she failed to present this claim, regardless of its legal form or framing, in the amended petition.

¶ 46    According to the State's May 3, 2016, motion requesting that the matter be set for trial on June 27, 2016, the DNA lab report was tendered on April 19, 2016. The State informed the court that the report indicated the presence of two individuals previously unknown to the investigation, and the State required additional time to investigate them. While Dorsey's trial counsel objected to this continuance at the time, the State points out on appeal that Dorsey cannot claim that this was part of an improper delay because he argued in his *pro se* postconviction petition that trial counsel was ineffective for allegedly failing to investigate these two witnesses.

15

¶ 47    The circuit court declared a mistrial on June 29, 2016, after the State requested a further continuance based on the unavailability of Lane. The court set a new trial date of July 25, 2016, and attributed one week of the continuance to Dorsey based on defense counsel's unavailability.

¶ 48    The State filed a motion to continue on July 21, 2016, explaining that two witnesses were unavailable. The State argued, and the circuit court agreed, that Dorsey's statutory speedy trial right was not implicated because of the previous mistrial. See *People v. Bradshaw*, 2020 IL App (3d) 180027, ¶ 27 (citing *People v. Gilbert*, 24 Ill. 2d 201, 204 (1962)). The court also found that the continuance was not unreasonable and Dorsey did not demonstrate prejudice based on the continuance. There is no basis in the record for a finding that the court erred in its decision regarding this or any prior continuance.

¶ 49    The time between the mistrial on June 29, 2016, and the retrial on August 15, 2016, was 47 days, 7 of which were attributed to the defense. The State compares the present matter to the decision in *Wills*, in which 152 days had elapsed between mistrial and retrial. In the latter, the court found the delay to be long enough to trigger an inquiry, but ultimately determined that the crowded court docket was a sufficient excuse for the delay, and that it did not result in prejudice to the defendant. *Wills*, 153 Ill. App. 3d at 335-36. While there is no set time past which we are required to review a delay, we agree with the State that in the present matter, it is not necessary for us to conduct an inquiry into this issue. Dorsey does not contend that the circuit court abused its discretion or that he was prejudiced by the delay between mistrial and retrial, and we decline to make such findings.

¶ 50    The State also addresses the 205 days that Dorsey spent in custody between arrest and the original trial date of June 27, 2016. In his motion to dismiss for speedy trial violation, Dorsey acknowledged that 36 of those days, between December 1, 2015, and January 5, 2016, were

16

attributable to the defense. This leaves 169 days of custody remaining. As the State argues, it requested and was granted a total of 93 days of continuances from January 5, 2016, through May 3, 2016, because it was awaiting DNA testing results pursuant to pursuant to section 103-5(c) of the Code (725 ILCS 5/103-5(c) (West 2014)). The relevant portion of this section states that, if the court determines "that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that any such results may be obtained at a later day," the court may grant a continuance of no more than 120 days past the 120-day limit provided for by section 103-5(a). *Id.*; see also *People v. Workman*, 368 Ill. App. 3d 778, 781 (2006).

¶ 51    Because the State contends that the continuances it sought pursuant to section 103-5(c) were proper, and therefore tolled the 120-day speedy trial limit, it concludes that only 76 days had run on Dorsey's right to a speedy trial as of June 27, 2016. Beyond that, the delay between mistrial and retrial was, for the previously-mentioned reasons, insufficient to prejudice Dorsey, even if he had raised such an argument. We cannot find that the circuit court erred in granting continuances based on its findings that the State exercised due diligence in obtaining materially relevant DNA test results and in conducting further investigation after reviewing the lab report. Notably, Dorsey does not challenge the court's rulings on appeal, and we need not review such argument further.

¶ 52    In summary, we find that Dorsey has not shown that counsel failed to pursue a meritorious claim by not amending the petition to raise a speedy trial violation, and present it as a claim of ineffective assistance of counsel on direct appeal. Dorsey cannot evade the facts in the record by reframing the legal theory under which counsel could hypothetically state a statutory speedy trial violation. The record shows that neither postconviction counsel nor direct appeal counsel was mistaken in deciding not to pursue this claim, and that trial counsel adequately preserved Dorsey's

17

speedy trial right. Therefore, we find that postconviction counsel performed reasonably in deciding not to raise this claim in the amended petition.

¶ 53     D. Whether Postconviction Counsel Properly Raised Dorsey's Sentencing Claim

¶ 54     Dorsey argues that postconviction counsel failed to provide reasonable assistance by abandoning his *pro se* claim that his 80-year sentence for acts that occurred when he was 19 years old violated the proportionate penalties clause of the Illinois Constitution. He further raises the Fourth District's statement on direct appeal that this issue was better suited for collateral review since there had been no evidentiary hearing on how *Miller* applied to Dorsey. See *Dorsey*, 2019 IL App (4th) 160781-U, ¶ 87.

¶ 55     The Supreme Court in *Miller* raised concerns over mandatory life sentences imposed on juveniles, stating that "[b]y removing youth from the balance *** these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Miller*, 567 U.S. at 474. As summarized by our supreme court in *People v. Lusby*, "*Miller* did not foreclose the possibility of discretionary life sentences for juveniles. Instead, the Court mandated a 'certain process—considering an offender's youth and attendant characteristics' before a trial court may impose such a sentence." 2020 IL 124046, ¶ 33; see also *People v. Reyes*, 2016 IL 119271, ¶ 9 ("*Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation."). In order to prevail on a claim based on *Miller* and its progeny, "a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*,

18

and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *People v. Buffer*, 2019 IL 122327, ¶ 27.

¶ 56 Dorsey argues that he supported his *pro se* sentencing claim in his original postconviction petition with citations to *Miller*, *Buffer*, and *People v. House*, 2015 IL App (1st) 110580, as well as Illinois decisions discussing how current science recognizes that parts of the brain associated with reasoning do not fully develop until age 25. In *House*, a 19-year-old defendant received a new sentencing hearing in light of *Miller*. Dorsey notes that our supreme court vacated the decision in *House*, but also remanded the case to the trial court for further second-stage proceedings in order to develop the evidentiary record—the same remedy he seeks here. See *People v. House*, 2021 IL 125124, ¶¶ 31-32, 43. He contends that postconviction counsel should have built on, rather than rejected, this support that he provided for his sentencing claim, specifically by (1) including evidence of why the *Miller* factors should apply to Dorsey because his brain was more like that of a juvenile than an adult, (2) including evidence of his rehabilitative potential, and (3) attaching documentation of his efforts at rehabilitation.

¶ 57 Dorsey further alleges that postconviction counsel provided unreasonable assistance because, rather than developing his *pro se* claim as mentioned above, she only attached an unsigned affidavit consisting of unsupported legal conclusions, and failed to provide the circuit court with an updated affidavit signed by Dorsey despite having seven months to do so. He further argues that, despite being aware of the appellate court's belief that a proportionate penalties claim was better suited for collateral proceedings, counsel abandoned the claim, and instead presented a claim that the Illinois Truth-in-Sentencing Act (730 ILCS 5/3-6-3(a)(2) (West 2016)) was unconstitutional as applied to him because his mental acuity was that of a juvenile rather than an

19

adult. He adds that she failed to adequately support that claim with legal authority, facts, or argument.

¶ 58 The Fourth District has already addressed Dorsey's reliance on *House* on direct appeal, and we adopt the same position here. The 19-year-old defendant in *House* was sentenced to natural life imprisonment stemming from an incident in which he served as the lookout during a shooting. *House*, 2015 IL App (1st) 110580, ¶ 82. He argued that his sentence violated the Illinois Constitution's proportionate penalties clause due to his minimal involvement in the commission of the crimes, as well as his young age. *Id.* ¶ 80. He was found guilty under an accountability theory, which "mandates that all participants of common design are considered equally responsible." *Id.* ¶ 82. The reviewing court found that the proportionate penalties clause was unconstitutional as applied to the defendant and remanded for a new sentencing hearing, stating, "Given defendant's age, his family background, his actions as a lookout as opposed to being the actual shooter, and lack of any prior violent convictions, we find that defendant's mandatory sentence of natural life shocks the moral sense of the community." *Id.* ¶¶ 101-02.

¶ 59 Our supreme court determined that the record in *House* was insufficiently developed to make a proper determination on the defendant's as-applied constitutional challenge, and remanded the matter for second-stage postconviction proceedings for further development. *House*, 2021 IL 125124, ¶¶ 31-32. The present matter presents a distinguishable situation. In *House*, our supreme court had previously issued a supervisory order directing the appellate court to vacate its prior judgment and consider the effect of the decision in *People v. Harris*, 2018 IL 121932, on the defendant's proportionate penalties clause claim. *Id.* ¶ 21. On remand, the parties filed an agreed motion for summary disposition asking the appellate court to remand the case for further second-stage postconviction proceedings, to give the defendant the opportunity to consult with counsel

and develop his arguments based on the evolving science on juvenile maturity and brain development. *Id.* ¶ 22. The appellate court denied the agreed motion and relied on the same reasoning it had used earlier to again affirm the dismissal of the postconviction petition. *Id.* ¶ 23.

¶ 60 Here, we are not dealing with a unique procedural posture that necessitates further collateral proceedings to develop the record. Furthermore, Dorsey was the actual shooter in the underlying crime, rather than someone with minimal involvement who was found equally responsible under a theory of accountability. The defendant in *House* received a mandatory sentence of natural life, because that was the mandated sentence for all defendants convicted of murder of more than one decedent, without consideration of age or level of culpability. *House*, 2012 IL App (1st) 110580, ¶ 80. This is entirely distinguishable from the present matter, in which the circuit court was not similarly restrained in its sentencing determination. On the contrary, the circuit court was able to exercise its broad discretionary powers in sentencing Dorsey, including deciding how to weigh his age and disadvantaged upbringing.

¶ 61 As the State notes, the issues of Dorsey's young age and difficult upbringing were raised by trial counsel at the sentencing hearing, and discussed by the circuit court in its deliberation. As we previously summarized, the circuit court heard and considered both the mitigating and aggravating factors. It acknowledged, in its own words, the "absolute tragedy" of imposing what is effectively a life sentence on a young man who was poorly raised by the State and given insufficient support to set him up for success. However, the court weighed all the relevant factors and exercised its discretion to ultimately find it necessary to impose this sentence.

¶ 62 We find that Dorsey has not shown that postconviction counsel provided unreasonable assistance by failing to develop his argument that his sentence violated the proportionate penalties clause. Dorsey was not a juvenile when he committed the offense. Regardless of whether current

21

science supports the position that he had not reached full mental and emotional maturity at the time of the offense, the record is clear that Dorsey's sentencing hearing was compliant with *Miller*. Trial counsel raised, and the circuit court considered, Dorsey's young age, his upbringing, and the fact that he was effectively receiving a life sentence. The court considered several mitigating and aggravating factors, including his past delinquency adjudications, and further determined that the sentence was necessary as a deterrent factor because Dorsey "armed himself with a firearm" and shot and killed the victim, his friend, "as a result of firing on other individuals." Thus, we find that the circuit court imposed the 80-year sentence following full consideration of Dorsey's youth, attendant circumstances, and lack of rehabilitation potential.

¶ 63    *Miller* and its progeny do not stand for the proposition that a trial court lacks the discretion to sentence a juvenile defendant to life in prison—rather, it may only do so after considering the defendant's youth and related characteristics. *Lusby*, 2020 IL 124046, ¶ 33. Postconviction counsel was not required to pursue the argument that Dorsey should be considered a juvenile for sentencing where it is clear that this would not have cured the defect in his proportionate penalties claim. See *Bass*, 2018 IL App (1st) 152650, ¶ 19. Additionally, the Fourth District's finding on direct appeal that a proportionate penalties clause claim was better suited for collateral review did not mean that the court was opining on the merits or possible success of such an argument. Therefore, we disagree with Dorsey's inference that postconviction counsel should have recognized the Fourth District's statement as an instruction to raise such a claim in the amended petition.

¶ 64    Lastly, Dorsey argues that postconviction counsel provided unreasonable assistance because she did not label his sentencing claim as a proportionate penalties clause claim, did not argue the correct factors, and only attached an unsigned affidavit consisting solely of legal conclusions with no specific facts related to Dorsey. We have already noted that postconviction

22

counsel was not required to attach an affidavit in support of a meritless claim, and the circuit court found that the facts in the record did not support the statements in the proposed affidavit. Regardless, the proposed affidavit did include several statements regarding Dorsey's age as it applied to his sentencing, including that: Dorsey was 19 at the time of the offense; he had diminished culpability for criminal behavior; his young age made him vulnerable to negative influences; his character was not yet formed and he still had significant rehabilitative potential; and his mental and emotional development was still at the level of a juvenile's. Dorsey does not show that there were any facts or applicable caselaw that postconviction counsel could have added to the petition to prove that his sentence was unconstitutional under the proportionate penalties clause. This applies to Dorsey's contention regarding postconviction counsel's failure to attach a signed affidavit, as well as to his argument that counsel mislabeled his claim as a Truth-In-Sentencing Act claim.

¶ 65    The record does not support a finding that the circuit court would have ruled any differently on the State's motion to dismiss Dorsey's petition had postconviction counsel done what Dorsey now argues on appeal. We therefore find that postconviction counsel provided reasonable assistance as it relates to Dorsey's proposed sentencing claim.

¶ 66                                          CONCLUSION

¶ 67    For the reasons stated, the circuit court did not err in granting the State's motion to dismiss Dorsey's amended postconviction petition. The judgment of the circuit court is affirmed.

¶ 68    Affirmed.